HEARD NOV. TERM, 1871.

## AHRENS *vs.* STATE BANK.

The appointment of a Receiver, under the Act "to enable the banks of the State to resume business, or to place them in liquidation," passed March 13th, 1869, and turning over to him the assets and property of the bank, was not a repeal of the bank charter, nor did it work such a dissolution of the charter as terminated the bank's corporate existence, and enable it to plead the fact in bar of an action by a creditor pending when the Receiver was appointed.

The rules of the Code of Procedure, in reference to amendments at the trial, and the right to disregard immaterial variances between the pleadings and the proofs, apply to actions pending when the Code was adopted, and in which issue had been joined.

A husband may maintain an action as holder upon a bill of exchange, payable to his wife or order, and endorsed by her and others—the last endorsement being in blank.

Under the Code, non-suit cannot be granted for a variance between the allegations and the proofs. The only remedy is by amendment "upon such terms as shall be just," as provided in § 192, and, to entitle himself to this remedy, the party prejudiced by the variance must satisfy the Court immediately, by affidavit, that he has been misled, and in what respect he has been misled.

In all other cases of variance the Court may, as directed by § 193, either disregard the variance and direct a verdict according to the evidence, or order an immediate amendment without costs.

It is only where, as mentioned in § 194, the allegation is not proved "not in some particular or particulars only, but in its entire scope and meaning," that the Court may, it seems. order a non-suit: and this is not deemed a case of variance, but one of failure of proof.

BEFORE CARPENTER, J., AT CHARLESTON, MARCH TERM, 1870.

*Assumpsit* by Charles D. Ahrens, plaintiff, against the President, Directors and Company of the State Bank, defendant.

The causes of action were two bills of exchange drawn by de-

26

fendant on a bank in Liverpool, and protested for non-acceptance. The declaration, filed 17th September, 1869, alleged that defendant made the bills payable "to M. F. Ahrens, the wife of the said plaintiff, or order," "and then and there delivered" the same "to the said plaintiff." There was no other allegation of title.

The pleas were non-assumpsit and the statute of limitations, and upon these issues were joined 8th November, 1869.

The case was docketed for trial at November Term, 1869, and on 5th March, 1870, defendant pleaded a special plea, as follows :

"And now, at this day, that is to say, on the second Monday of February, in the year of our Lord one thousand eight hundred and seventy, came the said defendants, by Wilmot G. DeSaussure, their attorney, and say that the said plaintiff ought not further to maintain this action against the said defendants, because they say that, after the second Monday in November, in the year of our Lord one thousand eight hundred and sixty-nine, from which day until the second Monday of February, in the year of our Lord one thousand eight hundred and seventy, the action aforesaid is continued, to wit: On the eighth day of December, in the year of our Lord one thousand eight hundred and sixty-nine, by an order made on the equity side of the Court of Common Pleas for Charleston County, in a cause therein pending, wherein George Garvin was plaintiff, and the President, Directors and Company of the State Bank were defendants, on the motion of D. H. Chamberlain, Attorney General, and signed by the Hon. R. B. Carpenter, Judge of the First Circuit, it was ordered as follows, to wit: "It appearing by the official notice of the Comptroller General of the State that the above-named defendants have failed to comply with the requirements of an Act of the General Assembly of the State, passed March the 13th, 1869, entitled "An Act to enable the banks of the State to resume business or to place them in liquidation," it is now ordered, on motion of D. H. Chamberlain, Attorney General, that the above-named defendants do turn over to James B. Betts, who is hereby appointed Receiver of the same, all the assets and property of the said State Bank, upon his filing with the Clerk of this Court his bond, with sureties to be approved by me, in the sum of ten thousand dollars, for the faithful discharge of his duties as said Receiver;" and that, in compliance with the aforesaid order, the said James B. Betts, having filed with the Clerk of the said Court the bond required of him, and approved as therein required, on the          day of December, one thousand eight hundred and sixty-nine, the defendants did

thereupon turn over to him all their assets and property, and by reason of such failure to comply with the provisions of the Act aforesaid, and by the order aforesaid, the defendants forfeited all corporate rights and privileges under the terms of the Act aforesaid, and, *inter alia*, the right to sue and be sued. And this the said defendants are ready to verify, wherefore they pray judgment if the said plaintiff ought further to have or maintain his said action against him."

This plea was verified by the President of the bank.

Plaintiff filed a general demurrer to the special plea.

At the hearing plaintiff proved the two bills of exchange alleged in his declaration. They were drawn payable "to M. F. Ahrens, in London, or order," and were specially indorsed by her to third persons, who also indorsed them. The last indorsement was in blank. The payee was the wife of plaintiff, and had been dead about five years before the case was tried. The bills were dated in November, 1861.

The Circuit Judge sustained the demurrer to the special plea, and overruled a motion for non-suit founded thereon. He also overruled a motion for non-suit made on the ground that the mere possession of the bills by the plaintiff was not a reduction into possession, and that the action should have been by the personal representative of M. F. Ahrens.

The verdict was for the plaintiff, and the defendant appealed on the following grounds:

1st. That his Honor the presiding Judge should have granted a non-suit upon the plea *puis darrein continuance* filed in this case, because from such plea it appeared that the defendants, one of the banks incorporated by authority of this State, failed to come in and renew business under the provisions of an Act of the General Assembly of this State, approved 13th March, 1869, and entitled "An Act to enable the banks of the State to renew business, or to place them in liquidation," and thereby forfeited "all corporate rights and privileges," and, *inter alia*, the corporate right to sue and be sued, and thereupon a Receiver was appointed, under the terms of the said Act, to take charge of the property and assets of the bank, and to proceed to a final settlement.

2. That his Honor the presiding Judge should have granted a non-suit, because the suit was brought by Charles D. Ahrens, the husband of the drawee, Mary F. Ahrens, and after her death, and

not by the personal representative of the said drawee, Mary F. Ahrens, as such suit should have been brought after her death.

*W. G. DeSaussure* contended, upon the first ground, that the Act of March 13th, 1869, and the proceedings which had been had thereunder, amounted to a dissolution of the charter of the bank, and terminated its corporate existence ; that the effect upon the action was the same as the death of a natural person upon an action pending against him ; that the facts were pleadable in bar of the action, and were in this case properly pleaded. He cited 2 Kent. Com., 305; 1 Bl. Com., 484–5 ; Ang. & A. on Corp, 667 ; Abbott on Corp., Tit. "Dissolution ;" Edwards on Receivers, 3, and many other authorities.

On the second ground he contended that the choses in action evidenced by the bills of exchange had not been reduced into possession by the plaintiff during the life of his wife, and that he could not maintain the action except as the executor or administrator of his wife. He cited Story on Prom. Notes, § 88 ; 1 Roper on Husb. & W., 202 ; Broom's Parties to Actions, 7 ; *Nash* vs. *Nash*, 2 Mad., 133 ; *Pitts* vs. *Wicker*, 3 Hill, 197, and other authorities.

*Phillips*, contra :

As to first ground : A cause of forfeiture cannot be taken advantage of or enforced against a corporation collaterally, or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation, so that it may have an opportunity to answer.—Angell & A. on Cor., Sec. 777, p. 785. But where the terms of a charter are, that the corporation shall be dissolved on non-performance of a condition, the mere failure to perform is not *ipso facto* a dissolution, but judicial proceedings and a judgment of ouster must be had in order to effect a dissolution.—Id., p. 787 ; 5, J. C. R., 381, *Kee* vs. *Bloom* ; 2 J. C. R., 389, *Attorney General* vs. *The Utica Insurance Company.*

All questions concerning the possession or forfeiture of chartered rights belong exclusively to Courts of Law; and the Courts of Chancery will not sustain a bill in aid of an information, in the nature of a *quo warranto.*—Clin. Di., 1, 729, *Attorney General* vs. *Bank of Niagara* ; Hop., 354.

The Legislature could amend or repeal the bank's charter, but could not violate the obligation of the contract subsisting between the plaintiff and the defendant.—6 Cranch, 135, 136, *Fletcher* vs. *Peck* ; 7 Id., 164, *New Jersey* vs. *Wilson.*

A State can no more impair by legislation the obligation of its own contracts, than it can impair the obligation of the contracts of individuals.—10 How., 187, *Woodruff* vs. *Trapnal.*

As to second ground: The husband and wife being one person in law, the former cannot after marriage, by any conveyance of common law, give an estate to the wife, nor the wife to the husband.— Co. Litt., 112, A. 187 ; 3 Shars., Black's Com., 442 ; 2 Vern., 385 ; 3 Atk., 72 ; 1 Ld. Ray., 515.

A husband who survives his wife is entitled to all her choses in action, whether reduced into his possession in her life time or not.— 6 Johns. R., 112, *Whittaker* vs. *Whittaker* ; 3 Kent. Com., 113, 115.

Such a thing as a grant of a personal estate to the wife by the husband is unknown at law. The wife's legal existence is merged in that of the husband, and she can have no separate legal estate.— 3 Strob., 461, *Frierson* vs. *Frierson.*

A note made payable to the wife or bearer on which the husband brought suit as bearer, alleging a transfer to himself by delivery from his wife is recoverable. Where a note is made payable to a *feme covert,* and by her endorsed or transferred to a stranger, such endorsement or transfer gives no title, the legal interest being in the wife.—2 Spears, 554, *Fort* vs. *Brunson.*

Upon marriage, the chattels of the woman become the husband's, and he alone can sue for their conversion. If she is joined, it is error.—*Blanchard* vs. *Blood*, 2 Barb., 352.

May 5, 1872.   The opinion of the Court was delivered by

WILLARD, A. J.   The questions arising on the plea *puis darrein,* are : first, does the appointment of a Receiver for a banking corporation, under the provisions of the Act entitled " An Act to enable the banks of this State to renew business, or to place them in liquidation," (approved March 13th, 1869, 14 Stat., 212,) operate as a dissolution of such corporation ? and, second, can such fact be pleaded, in an action against such corporation, in behalf of the corporation ?

The first Section of the Act in question provides as follows : " That all the banks incorporated by authority of the State, and which have by said authority issued bills of credit, known as bank bills, and have failed to comply with said corporate privileges, by refusing to pay their bills of credit, and are now thus failing to comply with the provisions of said Act of incorporation in this particular, and shall so continue to violate said Act, until the first

day of December, 1869, shall forfeit all corporate rights and privileges, and are forbidden to transact any business as banking institutions: *Provided,* That the redemption of their bills in United States currency shall be deemed the fulfillment of their obligations to the holders of said bills."

The second Section requires the Comptroller General to "notify the Judge of the Circuit in which such bank or banks may be situated, of each and every bank failing to comply with the requirements of the first Section of this Act, whose duty it shall be to appoint.a suitable person as Receiver of each of the aforesaid banks, who shall, after having filed a bond, with good and sufficient security, to be approved by the said Judge, take charge of the property and assets of the bank."

Under the provisions of the Act in question, a Receiver has been appointed to take charge of the assets of the State Bank, the present defendants.

It has been argued that the operation and effect of this Act, as bearing upon the corporate character of the defendants, is the same as if the Legislature had in terms repealed their charter, consequently that they have no existence as a corporation, and cannot be sued as such. This view cannot be maintained.

It is not questioned but that the Legislature had full authority to repeal the charter under a reservation of authority for that purpose, to which their franchise was subject. The only question is whether such power of repeal has been completely exercised.

The power and function incident to the franchise of incorporation being derived from the Legislative grant may, independently of constitutional limitations of the Legislative power, be resumed at any moment, independent of the extent or duration of the original grant.

In an enlarged sense the term repeal may be regarded as including all modes of terminating the existence of a corporation, whether direct or indirect, absolute or conditional. In its ordinary sense that term includes only such Legislative action as assumed to terminate the powers of a corporation on grounds of public policy without being conditioned on any future act or neglect of the corporate body, in violation of the provisions of its charter, or of its obligations, either imposed by law or voluntarily assumed.

A Statute imposing a duty upon a corporation, and declaring as a consequence of the violation of such duty that its franchises shall cease, is not, in the technical sense, a repealing Statute, but the loss

of corporate powers being intended as a penalty, the Statute must be construed as penal in its nature.

The Statute in question belongs to the last named class. It recites the fact that certain banking corporations had failed to comply with their corporate privileges, by refusing to pay their bills of credit. It does not simply revoke the charters of such corporations on the grounds of such past delinquency.

The forfeiture was not to take effect except in a case of a corporation continuing to neglect a corporate duty for a specified time after the passage of the Act, namely, until the first day of December next thereafter. The direct and intended effect of the Act was to impose an imperative duty on such corporations to comply with their obligations of the designated class, by the time fixed, coupled with a penalty of the loss of its franchises if such duty was not performed. It was therefore to be regarded as amendatory of the law by which the corporation was bound, rather than as a repeal in the technical sense. This view is strengthened by the use, in the Act, of such words as "shall so continue to violate said Act," and "shall forfeit all corporate rights and privileges," expressive of an intention to divest them of their privileges on the ground of a wrong committed in their exercise, rather than in virtue of the arbitrary power of the Legislature to resume at will such grants of corporate franchise.

The question then arises, whether the fact of a forfeiture under the terms of the Act can be taken advantage of by way of plea interposed in an action at law, by a creditor, against such corporation.

The general rule of law applicable to the case is laid down by Angell and Ames on Corporations, (Sec. 777,) as follows : " A cause of forfeiture cannot be taken advantage of, or enforced against a corporation, collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation, so that it may have an opportunity to answer. And the Government creating the corporation can alone institute such proceeding ; since it may waive a broken condition of a compact made with it, as well as an individual." Ch. Kent advances the same idea in *Kee* vs. *Bloom*, 5 Johns. Ch., 366.

The authority just quoted recognizes two elements in the question whether a judgment establishing a forfeiture under such an Act, is essential for the dissolution of the corporation. One is the nature of the liability to which the corporation is subject, and the other is the character of the corresponding right to enforce such forfeiture,

vested exclusively in the State. That these considerations are properly involved, will clearly appear from the examination of the character of the Statutes of the class under consideration.

Such Statutes are not self-executing. They do not profess, as their direct object, to work changes in rights of property or persons. They are, in their operation, conditional. They either prescribe a rule of conduct for all persons, including corporations, or for some specified class, or forbid certain actions, attaching a penalty to a violation of such requirements. In the case of corporations, the penalty is frequently a loss of corporate rights. This penalty, although peculiar to corporate bodies, does not differ in principle from any other of the customary classes. Such laws are not self-executing, for it cannot be affirmed, upon the ground of the legal construction of the Statute alone, that such a specific corporation has become dissolved. Before such a result can be reached, a state of facts must be ascertained to exist; the corporation to be affected by the Statute must be brought within its terms, by the proof of facts showing it to have come within the case contemplated by the Statute as ground of dissolution. A judgment upon such proof is essential to connect it with the Statute. The judgment excludes the corporation from the benefit of the condition, and subjects it to the penalty.

Therefore, it follows, that before any Act creating a duty, either affecting individuals or corporations, and prescribing the loss of property or right as the consequence of the violation of such duty, can operate to produce such effect, there must be a direct judicial act ascertaining the grounds of such forfeiture.

The reason given by the authority quoted why a judicial proceeding is requisite—that the corporation has a right to answer—shows that the proceeding must be an ordinary judicial proceeding as contradistinguished from an informal or *ex parte* proceeding.

The State alone has a right to enforce this penalty. It may waive the forfeiture if public policy would be better subserved. The corporation cannot take advantage of its own wrong, nor claim to have been dissolved in virtue of its own illegal misconduct. If it possessed such a right, it might retain its corporate privileges long enough to reap some particular benefit for its stockholders, and then, by a wrong committed by itself, lay claim to escape its duties to the public, by a self-assumed dissolution.

From the foregoing remarks, it will readily be perceived that the

appointment of a Receiver, under the statute in question, is not such a judicial proceeding as can operate to dissolve the corporation.

It is an *ex parte* application, based wholly on a state of facts, certified by an executive officer, the Comptroller General. It is made the duty of the Circuit Judge to appoint a Receiver on such certificate alone. No intention to repeal the provision of the general laws ascertaining the rights of parties charged with violations of the laws to a regular proceeding before conviction or loss of right is manifested by this statute. Nor can such an intention be presumed as against common right.

In the remedy given by the statute no provision is made for any judicial act or determination intended to operate as a dissolution of the corporation, but it is confined to providing means for administering the assets of the corporation. The fair and reasonable construction of the statute is that it does not dispense with the necessity of a judgment of dissolution before the corporate character is lost, nor with the necessity for a regular proceeding, based upon proof of the facts bringing the corporation within the statute, before the Receiver can be placed in possession of the assets, as against the will of the corporation. It does not, however, follow that such an application to place the Receiver in possession of the assets, cannot be made before a judgment of dissolution, for the two acts are not necessarily connected by the statute.

The present action is clearly a collateral proceeding, as it regards the liability of the corporation to dissolution. Although the fact of dissolution might become important in an action at law, as bearing on the question whether proper parties are before the Court, yet the fact that the defendants have subjected themselves to liability to be dissolved under the statute, is, in no respect, an issuable fact in such an action, unless brought for the purpose of dissolving such corporation. Had the action been brought by the corporation against one indebted to it, it would not be doubted that the defendant could not plead the fact of forfeiture. It would, in that case, have been manifestly a collateral attempt to make the fact of a forfeiture available.

It is equally so, when the corporation is the defendant. In either case the action would involve the relations of debtor and creditor, and the question of forfeiture under the statute would be foreign to any proper issue joined under it.

The demurrer to the plea *puis darrein,* was properly sustained.

The only other exception taken is based upon the refusal of a non-suit. This motion was properly denied.

The plaintiff proved two drafts, drawn by the defendants in favor of Mary F. Ahrens, and endorsed by her. The last endorsement is in blank, entitling any lawful holder to recover against the drawer. The productions of the drafts, thus endorsed, was sufficient, *prima facie,* to establish the plaintiff's title to the draft. If he was not the lawful holder of the drafts, nor entitled to sue upon them, that was a fact to be shown by way of defence. The plaintiff was entitled to *recover,* as holder of the drafts, in his own right, and was not compelled *to deduce* his rights by any proof of succession to his wife's personal estate, notwithstanding his wife was the payee of the drafts.

It is said that the plaintiff is not entitled to recover as holder of the draft alone, inasmuch as he has declared upon them as derived in the right of his wife as payee. It will not be necessary to look into the pleadings to ascertain whether ground exists there for this objection, as the Code provides a different remedy applicable to the case from that sought by the appellant.

Under Section 465 the provisions of the Code are applicable to future proceedings in suits *theretofore* pending, where issue has been joined, and governs the proceedings upon the trial and all subsequent proceedings in such cases. Without assuming to say that the force or effect of the pleadings, or the character of the issue joined, is changed by subjecting such issues to the provisions of the Code respecting the trial and its incidents, it is clear that a question of variance between the proofs introduced at the trial, and the allegations of the pleadings, so far as it involves the right of the Court to direct an amendment of the pleadings, or to disregard the variance as immaterial, must be regarded as controlled by the rules and regulations governing the trial and its incidents. The Code furnishes the remedy in case of such a variance.

Under Section 192, no variance is to be regarded as material unless it has actually misled the party, and in that case his remedy is to satisfy the Court immediately, by proof by affidavit, that he has been so misled. The effect of such proof is not to prevent the Court from allowing an amendment to such case, but to entitle the party prejudiced by such amendment either time or such other compensatory terms and conditions as may be reasonable.

The object of the Code is to secure to parties, acting in good faith, the fullest right to rectify, by amendment, any defect in pleading the result of misapprehension, inadvertence or accident,

but at the same time to protect, as far as possible, the substantial rights of the party prejudiced by such amendment.

If the party prejudiced by such variance does not take advantage of the remedy afforded by Section 192, then, under Section 193, it is the duty of the Court to disregard the variance as immaterial, and either to order an immediate amendment, or to direct the fact to be found according to the evidence.

Section 194 was intended to guard against the application of Sections 192 and 193 to cases which are not, properly speaking, cases of variance, but where the party has proved, on the trial, a state of facts foreign to the allegations of the pleadings, and having the effect to leave the facts alleged in the pleadings unproved in their "entire scope and meaning." It is obvious that variances, involving nothing more than technical differences between the allegations and proofs, can only be made material in the mode pointed out in Section 192. If there is the want of an averment in the pleadings sufficient to entitle the plaintiff to recover on the drafts as holder, it must be regarded as a technical, and not a substantial defect. It certainly cannot be said that the declaration is improved in its entire scope and meaning.

Under the foregoing provisions of the Code, a motion for a non-suit is not the proper mode of taking advantage of any variance that might have occurred; nor can this Court set aside the judgment, if sustained by the proofs, on the ground of any such variance in view of the provisions of the Code in question.

The judgment should be affirmed.

*Wright*, A. J., concurred.

MOSES, C. J. I propose, in a very brief manner, to state the reasons of my dissent from the views expressed in the opinion of the Court in this case.

The Legislature may, beyond doubt, reserve to itself the power to change, modify or repeal a charter which it grants, because its acceptance, subject to such retained right, binds the corporation. The charter of this bank was last renewed in 1853, (12 Stat., 243,) and therefore subject to the operation of the 41st Section of the Act of 1841, (11 Stat., 168,) which subjects it to "amendment, alteration or repeal by the Legislature." I regard the Act of March, 1869, as by its terms working a repeal of the charter, to take effect on the refusal of the defendant to comply with the conditions prescribed by it, and the want of objection or opposition to the appoint-

ment of a Receiver, an admission that on the 1st day of December, 1869, it had failed to resume specie payments. The words of the Act, "shall forfeit all corporate rights and privileges," and "are forbidden to transact any business as banking institutions," operate, in my judgment, as a direct repeal.

Nor do I think the action maintainable by the husband, the plaintiff, in the character of payee of the bills of exchange sued on, which were payable to his wife, who died before action brought. There was no proof that the husband, in her life time, had done any act "to shew an election to take them to himself," or "any expression of dissent by him to his wife's having any interest in them." The rule of law applicable is fully laid down in Smith's Law of Contracts, 299—where the cases of _Richards_ vs. _Richards_, 2 B. & Adolph., 447, and _Gaters_ vs. _Madley_, 6 M. & W., 423, are referred to.

I cannot regard the provisions of the Code as in any way aiding to cure the defect. The issue was joined before its passage. The 465th Section declares "that the provisions of this Act apply to future proceedings in actions or suits heretofore commenced and now pending, as follows: 1st. If there have been no pleading therein, to the pleadings and all subsequent proceedings. 2d. When there is an issue of law or of fact, or any question of fact to be tried, to the trial and all subsequent proceedings." The Section cannot aid the variance.