NEW-YORK,
May, 1832.

Bank of Niagara
v.
Johnson.

---

## THE BANK OF NIAGARA *vs.* JOHNSON.

Under the act of 1825, "to prevent fraudulent bankruptcies by incorporated companies," an action prosecuted by *receivers* in the name of a *corporation,* may be maintained against a *bank director* for the penalty incurred by paying out a portion of the capital stock of the company to a stockholder, although it be admitted by the pleadings that the bank had been *insolvent for one whole year,* had during that time *neglected to redeem its notes,* and had *suspended its ordinary business.* In the declaration, however, it must be averred that the suit is prosecuted by the direction of the receivers.

Such suit may be brought in the name of the corporation although the act declares that any company violating its provisions shall be deemed and adjudged to have *surrendered* its rights, &c. and shall be deemed to be *dissolved;* the surrender and dissolution spoken of in the act is but a *quasi* and not an absolute and consummated surrender or dissolution; the company remains *in esse* until it is formally adjudged to be dissolved.

Since the revised statutes, the *receiver* in such cases is authorized to bring actions in his own name.

DEMURRER to replications. This is an action of debt, commenced in May, 1830, in the name of "The President, Directors and Company of the Bank of Niagara," against the de-

fendant, as one of the *directors* of such bank, for a *penalty* alleged to have been incurred by him, under the second section of the act " to prevent fraudulent bankruptcies by incorporated companies," passed 21st April, 1825, Laws of 1825, p. 448. by *being present* at a meeting of the board of directors on the 23d November, 1825, *and not dissenting* from a resolution then passed, directing the cashier of the bank to pay to certain stockholders the amount of *capital stock* paid in by them on shares by them respectively held.

The second section of the act provides, among other things, that it shall not be lawful for the directors of any incorporated company in this state to divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of such company, or to reduce the capital stock, without the consent of the legislature ; and in case of the violation of the provisions of that section, *it enacts* that the directors under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen, shall, in their individual and private capacities, jointly and severally, be liable to the said corporation and to the creditors thereof, in the event of its dissolution, to the full amount of the capital stock of the said company so divided, withdrawn, paid out or reduced, with interest from the time such liability accrued.

The *declaration* alleges, that on the 23d November, 1825, the directors of the Niagara bank passed a resolution directing their cashier to pay to three persons (naming them) the amount of monies which had been paid on the *capital stock* held by them respectively, setting forth the number of shares of stock held by each, and that the cashier, in pursuance of such resolution, accordingly paid to them certain sums, amounting, in the whole, to $2,675 ; and that at the passage of such resolution, the defendant being a *director*, was *present*, and did not *dissent*. The defendant *pleaded* seven pleas : 1. the general issue ; 2 *nul tiel corporation ;* 3. that on the 1st January, 1830, the bank surrendered its rights, privileges and franchises as a corporation ; 4. that on the 1st January, 1830, the bank had been *insolvent for one whole year,* and so remain-

ed, whereby it surrendered its rights, privileges and franchises, as a corporation, and became and was dissolved; 5. that the bank on the 1st January, 1830, had for one whole year *neglected to redeem its notes,* and thereby surrendered its rights, privileges and franchises, and became dissolved; 6. that on the 1st January, 1830, the bank had *suspended its ordinary business* for one whole year, and thereby surrendered its rights, privileges and franchises; and 7. that on 1st January, 1830 the bank surrendered its rights, privileges and franchises, and thereby ceased to be a body politic. The plaintiffs reply, taking issue upon the *first* plea, and in answer to the *second* plea, set forth the act of incorporation of the Niagara bank, and as to *the residue of the pleas* they admit their *insolvency,* and the *suspension of their ordinary business* as a corporation, as alleged in those pleas, and that they thereby had surrendered their rights, privileges and franchises as a corporation, but *for replication,* to those pleas, say that they have never surrendered their rights, privileges and franchises *in any other manner than as above stated,* to wit, &c., and that before such surrender, and before the commencement of this suit, to wit, on the 24th April, 1828, the plaintiffs became, and have since continued wholly insolvent, and unable to pay their debts ; and that while they were so insolvent, to wit, on the 27th May, 1828, *an order was made by the chancellor* of the state, appointing two *receivers* of the property, &c. of the bank of Niagara, and that on the same day an injunction was issued against the bank, restraining the exercise of any of its privileges as a corporation, receiving or paying debts, or transferring any of the monies or effects of the bank, which injunction was duly served, and that the order appointing receivers, and the injunction issued, remain in full force ; that the receivers so appointed did take upon themselves the duties of their office, and did receive the property and effects of the bank, and that by the order of the chancellor, it was made the duty of the receivers to proceed and collect, without delay, all debts due and owing to the bank, and to commence all suits, &c. necessary for that purpose. By reason of which premises *the claim in the declaration mentioned* was duly transferred from plaintiffs to the receivers, *as trustees* for the creditors of the

plaintiffs, for whose benefit this action is brought, and the prosecution thereof is now continued.    To the replication to the last five pleas the defendant *demurs*, assigning several special causes of demurrer; und among others, that it is not alleged that this suit is brought *by the direction of the receivers.*

   *J. C. Spencer*, for the defendant.    The plaintiffs admitting in their replication that they had *surrendered* their rights, privileges and franchises as a corporation, are not entitled to sue. It is a good plea to the disability of a plaintiff, that he is a fictitious person, or has no existence ; and the plea that plaintiffs suing as a corporation, are not a corporation, may now by statute be pleaded in bar.    19 Johns. R. 308.    2 R. S. 458, § 3. The qualification in the replication that they have not surrendered, otherwise than in the manner alleged in the pleas, does not help the plaintiffs ; they admit they are not in existence, and the manner of their extinction is of no consequence. That a corporation may be *dissolved* by *surrender* of all its corporate rights, cannot be questioned; here the fact of surrender is directly charged, and expressly admitted.    For a definition of a *surrender*, the counsel cited 10 Co. 66, and Jacob's Law Dict. tit. Corporation.    That a corporation may be dissolved by acts equivalent to a direct surrender, has been repeatedly decided in this state.    *Slee* v. *Bloom*, 19 Johns. R. 474, and *Briggs* v. *Penniman*, 8 Cowen. 391.    In view of these decisions made in the court of dernier resort, the legislature pass the law of 1825, in which they say, that whenever any incorporated company shall have remained insolvent for one whole year, or for one year shall have neglected or refused to redeem its notes in specie, or shall for one year have suspended the ordinary business of such incorporation, such company shall thereupon be *deemed and adjudged to have surrendered* the rights, privileges and franchises granted by any act of incorporation, *and shall be deemed to be dissolved.*    Laws of 1825, p. 450, § 6. On the happening of either of those events, the corporation is *ipso facto* dissolved, and judgment of ouster is not necessary. The corporation could sue for a violation of the act under which the penalty is alleged to have been incurred, only during its existence ; and if the action can be maintained at all,

it should have been prosecuted in the names of the *creditors* of the corporation, or of the *receivers* appointed by the chancellor, as trustees for the creditors ; 1 Vesey, sen. 325; 1 Vesey, jun. 161 ; 1 Chitty's Pl. 15 ; and if the suit is prosecuted in the name of the corporation, *by the direction of the receivers*, it should have been so averred. 17 Johns. R. 284. If the corporation be extinct, admitting that the receivers may sue in the name of the corporation, they are not entitled to recover the penalty claimed in this case ; they are appointed receivers of the property, monies and effects of the company. What is sued for is neither property, money or effects ; it is a penalty imposed by statute, and could not pass as property.

*B. F. Butler*, for the plaintiffs. It is not denied that a corporation may be dissolved by a surrender of its franchises into the hands of the government ; but it is insisted that the acts relied upon in this case as equivalent to a surrender, are not evidence of such surrender. The plaintiffs admit in their replication that they had surrendered their rights, privileges and franchises *in the manner* set forth in the pleas, that is, that they had been insolvent for one year, had neglected to redeem their notes, and had suspended their ordinary business, but deny that they had surrendered in any other manner. These were the acts or omissions of the *directors*, and not of the stockholders ; a *renunciation* of the privileges conferred by the act of incorporation could be only with the assent of all the corporators. If the charter has been forfeited through abuse or neglect of its franchises, the forfeiture must be judicially ascertained and declared ; the power which has been abused or abandoned cannot be taken away but by regular process, and judgment of ouster. The surrender admitted by the replication being not otherwise than set forth in the pleas, the corporation is not dissolved ; and being in existence, a suit may be maintained in its name. The cases of *Slee* v. *Bloom* and *Briggs* v. *Penniman*, only determine that incorporations for manufacturing purposes will, within the spirit and meaning of the act of the legislature under which they were created, be considered *as dissolved* in certain events for the benefit of

NEW-YORK,
May, 1832.

Bank of Niagara
v.
Johnson.

NEW-YORK,
May, 1832.

Bank of Niag-
ara
v.
Johnson.

the *creditors* of such institutions ; not, that upon the happening of those events, the incorporations are in fact dissolved ; even in those cases it would not be permitted to a *debtor* of such a corporation to say that it was dissolved until judgment of ouster was pronounced. Until such judgment, it cannot be alleged, except by creditors, that a corporation is dissolved. 1 Hopkins, 354. The terms of the sixth section of the act of 1825, it is admitted, are very broad : " having remained insolvent, the company shall be deemed to be dissolved," is the language of the act. The object of the legislature in this enactment was simply to declare that upon the happening of either of the events specified, *judicially ascertained,* the company should be *adjudged* by a proper court to be dissolved ; but not that the mere happening of the event should be a surrender *de facto.* That this is the true construction, is manifest from the subsequent provision, making it the duty of the attorney-general, whenever such a surrender as is contemplated by the act takes place, to prosecute such corporation by *scire facias* or by *information* and to obtain judgment that such corporation be dissolved. And it may well be doubted whether the facts appearing in this case would warrant a judgment of ouster, at the suit of the state, as the very causes relied upon for such judgment may have been the result of the appointment of receivers and the issuing of the injunction which took place in May, 1828, and the violations of the act in the pleadings are laid on the 1st January, 1830.

The action is properly brought in the name of the corporation. This court has considered the act of 1825 in the nature of a statute of bankruptcy, and has viewed the receivers as trustees for the creditors. The Revised Statutes, vol. 2, p. 469, § 72, have defined the powers of receivers, but previous to that enactment their powers were not defined ; they took as receivers at common law, and of necessity were forced to bring their suits in the names of those they represented. In *chancery*, a receiver may sue in his own name, but at *law*, he must prosecute in the name of the party whom he represents. 1 Johns. Ch. R. 61. The provision in the second section of the act of 1825, declaring the liability of offending directors to the creditors of the corporation in the event of its dissolution, does not

affect the question in whose name the suit shall be brought. As to the right of the receivers to sue to the directors for the penalty imposed for a violation of the act, it is admitted that the power to sue is not expressly conferred by the order of the chancellor, nor is a penalty strictly either " property, monies or effects," within the language of the act ; but if the action be not sustained, the act cannot be enforced. The *third* and *seventh* pleas are defective, inasmuch as they do not shew any fact by which the plaintiffs had surrendered their rights, privileges and franchises. The defendant was bound to shew the facts relied upon, and that they came within the provisions of the statute, 5 Johns. Ch. R. 366 : 7 id. 217 ; 5 Mass. R. 230 ; 3 Dessaus. 574 ; Comyn's Dig. tit. Franchise ; and the whole five last pleas are bad, as amounting only to the plea of *nul tiel corporation.* 19 Johns. R. 300.

*Spencer,* in reply. If the replications be considered as *denying* the surrender by the plaintiffs of their rights, privileges and franchises, they are bad for not complying with the rule of pleading, " that a plea to be good, must be direct and positive, and not by way of rehearsal, reasoning or argument." 1 Chitty's Pl. 518. Pleading is the formal mode of alleging that on the record, which would be the support or defence of the party in evidence. The plea states the legal effect of facts, not the facts themselves. 8 Cowen, 727. The defendant here pleaded a surrender, and was not bound to state *quo modo ;* whether or not there has been a surrender, is a conclusion of law upon the facts as they shall appear at the trial. The object of the legislature, in declaring by the act of 1825 that incorporated companies in certain events should be deemed to have *surrendered* their rights and should be deemed to be *dissolved,* was to convert acts of *forfeiture* into acts of *suerender.* The intention was to afford remedies to creditors and not to the public : as to the latter, the usual remedies of *scire facias* and *information* are recognized. That a corporation may be destroyed by surrender, without a proceeding by the attorney-general, and without judgment of ouster, is manifest, as the act of 1825 authorizes the issuing of an injunction and the appointment of a receiver on the application of a creditor alone.

Did the legislature, then, mean to give a right of action to a corporation in fact dissolved? This cannot be pretended. If public policy required that incorporations for manufacturing purposes should, in favor of creditors, be considered in certain cases as dissolved, the same policy demands that incorporated companies should, under the act of 1825, be deemed to have surrendered their rights, or by the prosecution of suits, they may dissipate the very funds which were intended to be secured for their creditors. Assignees of insolvent debtors may sue in their own names; the right to do so results from the property being vested in them. So upon the same principle, the receivers may sue; but if they cannot, a bill should have been filed in chancery by the creditors, to whom the directors by the act are made responsible. The objection that the pleas amount only to the plea of *nul tiel corporation* cannot prevail; for if well taken, a special demurrer should have been interposed.

*By the Court,* SUTHERLAND. J. It is contended on behalf of the defendant, that the replication admits that the plaintiffs have become dissolved as a corporation, and therefore having no legal existence, that a suit cannot be prosecuted in their name. The dissolution of the corporation, or the surrender of their rights, privileges and franchises, admitted by the pleadings, is such surrender or dissolution, and such only, as the 6th section of the act of 1825, page 450, declares shall be the consequence of its insolvency, or of its neglect or refusal to redeem its notes, or of the suspension of its ordinary business, for one whole year. A surrender in any other manner is positively denied. The question then is whether, after such a dissolution or surrender, the receiver of the bank can institute a suit in its name for a cause of action which accrued before such surrender. 2. If it be conceded or shewn that such suit can be maintained for a debt due to the bank arising upon contract, can it for a cause of action like this—a penalty? 3. Is it sufficiently shewn by this replication that this suit was instituted by the directions of the receivers?

The act of 1825 merely authorizes the court of chancery, upon the application of the attorney general, or any creditor

of any incorporated bank which has become insolvent, &c.
" to appoint a receiver of the property, monies and effects of
said company." Sect. 17, p. 453. It does not define the pow-
ers of the receivers, nor prescribe the manner in which they
are to proceed. They are strictly common law receivers, and
have no powers except such as are conferred upon them by
the order appointing them, and the course and practice of the
court. This was so held by the chancellor, in the recent case
of *Verplanck* v. *The Merchantile Ins. Co.,* 2 Paige, 452. They
possess the same powers as the receivers authorized to be ap-
pointed by the 35th section of the act entitled, " Of proceed-
ings against corporations in equity." 2 R. S. 463. But the
41st and 42d sections of that act, page 464, provide for a re-
ceiver of a very different character, and by those sections his
duties are defined, to wit, to take charge of the property and
effects of the corporation, and to collect, sue for and recover
the debts and demands that may be due to it; and the 42d
section declares that such receiver shall possess all the power
and authority conferred upon receivers appointed in case of
the voluntary dissolution of the corporation, 2 R. S. 469, sect.
68; and such receiver has all the power and authority of
trustees or assignees of an insolvent debtor, 2 R. S. 21, sect.
28; and although I do not find that the revised statutes give
in express terms to such assignee the right to sue in their own
name, (as he insolvent act of 1813 does, 1 R. L. 468, sect. 19,
21,) yet I presume he would possess such power under the
general provisions of the act. The presumption is that the
revised statutes did not intend to change the law upon this
subject. In the case already referred to, *Verplanck* v. *The*
*Mercantile Insurance Company*, the chancellor says such re-
ceiver is a statutory assignee, vested with nearly all the
powers and authority of an assignee of an insolvent debtor.
But the receiver, under the act of 1825, being a common law
receiver or assignee only, and not a statutory assignee, cannot
sue upon a chose in action thus assigned to him, in his own
name. Although his rights as assignee will be protected, the
action must be brought in the name of the original creditor.
Where the suit is brought upon a negotiable instrument, it

may be brought in the name of the receiver as endorsee ; such was the case in *Haxton & Brace* v. *Bishop*, 3 Wendell, 13. If the action can be sustained at all, therefore, it must be in the name of the present plaintiff. 1 Johns. Ch. R. 61, *and cases there cited.* In this respect it stands upon the same ground with actions brought to recover debts upon contracts not negotiable, due to the bank.

It is very obvious that the surrender of the franchises or dissolution of a corporation, spoken of in the 6th section of the act of 1825, is but a *quasi*, not an absolute and consummated surrender or dissolution; for the very next section makes it the duty of the attorney general to prosecute such corporation, and obtain judgment that it be dissolved; and the 17th section authorizes the attorney general, or *any creditor* of a bank which shall have become insolvent, &c. to apply for an injunction and the appointment of a receiver. The corporation continues *in esse,* although shorn of its powers, until it is formally adjudged to have been dissolved, and its name may be used in the legal proceedings necessary to the winding up of its concerns.

The case of *Slee* v. *Bloom and others,* 19 Johns. R. 456, was very much relied upon by the counsel for the defendant. That was a bill filed by the creditor of the Dutchess Cotton Manufactory against the stockholders, to compel them to pay, or contribute to the payment of his debt, under the provisions of the 7th section of the act relative to incorporations for manufacturing purposes, under which that company had been incorporated. 1 R. L. 245, 7. The 7th section of that act provides, that for all debts which shall be due and owing by said company at the time *of its dissolution,* the persons then composing said company shall be individually responsible to the extent of their respective shares of stock. To establish the fact of a dissolution of the company, the bill, which was filed in April, 1819, charged, among other things. 1. That at a meeting of the stockholders in October, 1816, it was resolved that it was inexpedient to continue the factory in operation, and the superintendant was directed to shut it up and discharge the workmen; 2. That no election of trustees had been made since April, 1817, and the stockholders had come to a resolu-

tion never to make another election, but to abandon the factory and corporation altogether ; 3. That all the real estate of the company was sold upon execution in February, 1818 ; 4. That there had been no meeting of the stockholders since May, 1817; nor had the trustees had any meeting, nor transacted any business since December, 1817, but had determined to abandon and give up the factory and corporation, and suffer it to be dissolved, &c. These allegations were substantially admitted by the answer; and it was held in the court of errors, upon appeal, that they were evidence of a surrender of the corporate rights, and a dissolution of the company, for the purpose of giving its creditors a remedy against the individual stockholders for their debts. Judge Spencer, in his opinion, considers incorporations for manufacturing purposes, under the general act, as but a species of partnership, as possessing no franchises or privileges, and in that respect differing essentially from corporations to whom exclusive or peculiar privileges are granted ; and after adverting to the facts which have been stated, he says : " This corporation was dissolved, within the meaning and intent of the act, *as regards creditors,* when it ceased to own any property, real or personal, and when it ceased for such a space of time from doing any one act manifesting an intention to resume their corporate functions. The end, being and design of the corporation were completely determined ; and if even it had the capacity to re-organize and re-invigorate itself, the case has happened when, as it relates *to its creditors,* it is dissolved." It was held to be a dissolution, for the purpose of enabling the creditors of the corporation to enforce the remedy, which the legislature evidently intended to give them against the stockholders individually. It was well said that such remedy would be entirely illusory, if it could not be resorted to until the corporation had expired by its own limitation, or until the attorney-general, over whom the creditors had no control, should procure the corporation to be formally dissolved. But I doubt whether, if any action had been brought in the name of that corporation, to recover a debt due to it, it would have been held that it was so far dissolved that an action could not be maintained in its name. It was held to be dissolved for the sake of the partic-

NEW-YORK,

May, 1832.

Bank of Niagara

v.

Johnson.

ular remedy given. The same doctrine was held in *Briggs and others* v. *Penniman and others*, 1 Hopk. Ch. R. 301, and 8 Cow. 387, which was also an incorporation under the same general act. The doctrine of those cases is not applicable here, and I am of opinion that suits may well be brought by the receiver in the name of the bank.

I am also of opinion that the receiver may prosecute for the penalty given by the act, as well as upon contracts in the name of the bank. The penalty is a *debt*, and the act expressly provides, (2d section, page 449,) that the individuals who shall incur the penalty shall be liable therefor *to the said corration, and to the creditors thereof, in the event of its dissolution*. It is to be collected for the benefit of the creditors of the bank. The cause of action does not die with the corporation. But the statute gives no direction as to the manner or name in which the suit is to be brought. The replication avers that this action is brought for the benefit of such creditors.

The replication does not aver that this suit was brought *by the direction of the receivers*. This is assigned as a special cause of demurrer, and as such appears to me to be well taken. The replication shews that this claim was transferred from the bank to the receivers, and it ought to have averred that the suit was brought by their direction. On this ground the defendant is entitled to judgment, with leave to the pliantiffs to amend, on payment of costs.

The 3d and 7th pleas of the defendant are bad, inasmuch as they do not shew any fact by which the plaintiffs had surrendered their corporate rights. A mere general allegation that they had surrendered, is not sufficient. It will be found in all the cases that particular acts and circumstances are stated as evidence of the surrender, &c.