## THE STATE *vs.* THE FOURTH N. H. TURNPIKE.

Where a charter imposes upon a corporation the duty of making stated returns of its expenditures and profits, the government alone can enforce a forfeiture for a neglect of that duty.

The question whether the charter is forfeited or not, cannot be tried collaterally.

The forfeiture of a charter, incurred by the neglect of its duties on the part of the corporation, may be waived by the legislature.

The charter of a turnpike corporation provided that at the end of every six years after the setting up of any toll gate, an account of the expenditures and profits of the road should be laid before the legislature, "under forfeiture of the privileges of the act in future." Toll gates were erected in the year 1806. No account was laid before the legislature until the year 1830, but in that year, and in the years 1836 and 1842, accounts were submitted, which were received by the legislature as "sufficient and satisfactory," and in the year 1833 an act was passed authorizing the corporation to change the route of the road in certain places.—*Held*, that such acts amounted to a waiver of the forfeiture.

INFORMATION in the nature of *quo warranto*, filed by the Attorney General against the defendants, and stating that they, without any charter, warrant or grant, used the privilege of erecting

and maintaining a gate across the highway called the Fourth Turnpike Road in New-Hampshire, in the town of Wilmot, and of demanding and receiving tolls thereat for the year past, which privilege and franchise the defendants have usurped upon the State.

*Plea*, that by an act of the legislature, passed on the 8th day of December, 1800, the defendants were incorporated, and empowered to build and maintain a turnpike road from Lebanon to Salisbury or Boscawen, and to erect and fix so many gates as might be necessary to collect the tolls granted by their charter ; that they built the road, and established a gate across it in the town of Wilmot, and collected tolls thereat, as they lawfully might do, and that they have always claimed and exercised the privileges given them by their charter, and have not usurped them upon the State, and concluding with a verification.

*Replication*, that by the charter it is enacted that at the end of every six years after the setting up of any toll gate, an account of the expenditures and profits of the road shall be laid before the legislature, under forfeiture of the privileges of said act in future, and alleging that, forty years next before the filing of the information, the defendants did set up toll gates upon the road, and did take toll, and have ever since kept up gates and taken toll, yet that they have never rendered any account to the legislature of the expenditures and profits of the road, as they were bound to do, by reason whereof they have forfeited the privileges conferred by their charter.

*Rejoinder*, protesting that at the end of every year after the setting up of any toll gate, the defendants have rendered an account to the legislature of the expenditures and profits of the road, according to the true intent and meaning of the act, and alleging that the act farther provides, that whenever the net income of the road shall amount to the sums expended, with twelve per cent. interest thereon from the time of their disbursement, the road shall revert to and become the property of the State, and that the State may, at any time after the expiration of forty years from the passage of the act, repay to the defendants the amount of expenses incurred, with twelve per cent. interest there-

on, deducting the tolls received, and in that case the road should become the property of the State ; that the net income has never amounted to the sums expended, with twelve per cent. in addition thereto, nor has the State ever repaid or offered to repay the sums expended, with twelve per cent. in addition thereto ; that toll gates were erected on the road on the 2d day of March, 1806, and that in each of the years 1830, 1836 and 1842, at the end of the several terms of six years which terminated in those years respectively, the defendants laid before the legislature a true account of the expenditures and profits of the road ; that each account contained a statement of the income and expenditures of the road for the period of six years next preceding its rendition, and of the whole income and expenditures of the road before the rendition, each of which accounts was received by the legislature as sufficient and satisfactory ; that by an act passed on the 6th day of July, 1833, the defendants were authorized to change the route of the road in such places as they might deem expedient, in the towns of Lebanon and Enfield ; that the defendants accepted the act, and by its authority changed the route of the road at great expense in those towns ; that they have always enjoyed the privileges conferred by their charter ; that they are a body politic and corporate ; that their privileges still continue ; that they have full right to maintain toll gates and receive tolls, their privileges having been confirmed and continued to them in manner aforesaid.

To this rejoinder there was a general demurrer.

*Perley*, for the defendants. The replication admits that the defendants had a valid grant to take the tolls, and that they still have the right, unless it has been forfeited under the provision of the charter, requiring them to render an account at the end of every six years.

The rejoinder admits that gates were erected in 1806, and no account rendered until 1830, but alleges that the State have waived any right they had to insist on the forfeiture :

I. By receiving and accepting, as full and satisfactory, the accounts rendered in the years 1830, 1836 and 1842.

State *v.* Fourth N. H. Turnpike.

II. By a grant of new power made to the turnpike in 1833, after the regular accounts were rendered and after the forfeiture was waived.

1. The forfeiture is reserved to the State for her benefit. The provisions in the charter, set out in the rejoinder, show why the defendants were required to render periodical accounts.

2. The State, like an individual, may waive the right to insist on a forfeiture. 5 *Mass.* 232, *Commonwealth* vs. *Union Ins. Co.;* 9 *Wend.* 351, *The People* vs. *The Manhattan Co.*

3. Any acts of the State, treating the defendants as an existing corporation, and recognizing them as such, will constitute a waiver of a preëxisting ground of forfeiture. 9 *Wend.* 351, *The People* vs. *The Manhattan Co.*

4. The acceptance of the subsequent accounts as satisfactory, and especially the new act of 1833, waive the forfeiture and confirm the previous grant.

The State has not been injured by the preceding neglect. The State alone was interested. Here was no abuse nor neglect of duty.

The accounts informed the legislature of the whole income and expenses, and there is no pretence that the State has been deceived.

The new grant of 1833 is a new contract, sufficient to create a new corporation.

5. The form of the rejoinder is sufficient. The precedents show the course in such cases to be for the corporation to set out the facts on which they rely for a confirmation of their corporate rights and existence, and conclude with a general averment that their rights remain. *The King* vs. *The City of London,* 3 *Harg. St. Trials* 545 ; *The People* vs. *The Manhattan Co.,* 9 *Wend.* 351.

*Walker,* Attorney General, for the State.

GILCHRIST, J. The charter makes it the duty of the corporation to lay before the legislature, at the end of every six years after the setting up of any toll-gate, an account of the expendi-

tures and profits of the road, under the penalty of forfeiting the privileges of the act in future. These accounts, however, were not submitted until the years 1830, 1836 and 1842, in which years they were submitted to the legislature, and accepted by them as sufficient and satisfactory. In the year 1833 the legislature passed an act authorizing the corporation to change the route of their road in certain places. These are the facts laid before us, upon which we are to determine whether the defendants are now an existing corporation.

The accounts not having been laid before the legislature, the penalty of forfeiture was incurred in terms. But the subsequent accounts were accepted by the legislature as sufficient and satisfactory, and farther powers were conferred upon the defendants by the act of 1833. Has the legislature power to waive the forfeiture ? And if it has, do these facts amount to such waiver ? These are the questions presented to us by the pleadings.

The doctrine of the waiver of a forfeiture by the legislature by subsequent legislative acts does not apply, if, by the terms of the charter, the franchise absolutely determines on failure to perform the condition ; for as in such case the corporation has ceased to exist, the doctrine of waiver is inapplicable. The charter in this case provides that the accounts shall be laid before the legislature, " under forfeiture of the privileges of the act in future." The meaning of this is, that the forfeiture shall be proved in the regular, legal manner ; upon the institution and prosecution of proceedings in the established course, such neglect of this duty shall be cause of forfeiture. It probably would not be competent for a debtor of the corporation, when sued, to set up by way of defence that the charter of the corporation was forfeited, unless the forfeiture had been established by the judgment of this court. *Chester Glass Co.* vs. *Dewey,* 16 *Mass.* 102 ; *Bank of Niagara* vs. *Johnson,* 8 *Wend.* 645 ; *The People* vs. *The Manhattan Co.*, 9 *Wend.* 382. That is a matter to be judicially tried and determined, and not to be inquired into collaterally. Where a charter imposes the duty of making stated returns of the expenditures and profits, the government alone can enforce a forfeiture for a neglect of the duty. *Peirce* vs.

*Somersworth,* 10 *N. H. Rep.* 369 ; *The State* vs. *Carr,* 5 *N. H. Rep.* 367. In the case of the *Bear Camp River Co.* vs. *Woodman,* 2 *Greenl.* 404, the charter was to become void, if, at the end of one year, the river should not be cleared of certain obstructions. In an action of assumpsit to recover tolls of the defendant, he offered to prove that the removal of the obstructions had never been effected ; but the evidence was rejected at the trial, and the ruling was held to be correct. This case affords a strong illustration of the necessity of specific judicial proceedings for the purpose of causing the charter to be declared forfeited. And in the case before us, we think that by the omission to lay the accounts before the legislature, the corporation did not, *ipso facto,* cease to exist, but proceedings must have been instituted, to establish the fact that the penalty of forfeiture was incurred. *Rex* vs. *Pasmore,* 3 *T. R.* 244. A *quo warranto* is necessary where there is a body corporate *de facto,* who take upon themselves to act as a body corporate, but, from some defect in their constitution, cannot legally exercise the powers they affect to use. *Ashhurst,* J. Chancellor *Kent* says that he believes there is no instance of calling in question the right of a corporation, as a body, for the purpose of declaring its franchises forfeited and lost, but at the instance and on behalf of the government. *Slee* vs. *Boom,* 5 *Johns. Ch.* 381. In *The People* vs. *The Manhattan Co.,* 9 *Wend.* 382, Mr. Justice *Sutherland* says, " where the corporation expires by lapse of time, it may be otherwise, and in such case only." A corporation may forfeit its franchises for misfeasance or nonfeasance, but the information for that purpose must be presented under the authority of the State, which must be a party to the suit and a party to the judgment for the seizure of the franchise. *The Commonwealth* vs. *Union Ins. Co.,* 5 *Mass.* 230 ; *Rex* vs. *Amery,* 2. *T. R.* 515 ; *Vernon Society* vs. *Hills,* 6 *Cowen* 23.

The corporation, then, being in existence in the year 1830, did the reception of the accounts and the passage of the act of 1833 constitute a waiver of the preëxisting ground of forfeiture, so that it cannot now be insisted on ? It is said expressly, by *Parsons,* C. J., in *The Commonwealth* vs. *Union Ins. Co.,* 5 *Mass.*

232, that the commonwealth may waive any breaches of any condition, expressed or implied, on which the corporation was created. The surrender of a charter can be made only by some solemn, formal act of the corporation, and will be of no avail until accepted by the government. There must be the same agreement of the parties to dissolve that there was to form the compact. *Morton*, J., *Boston Glass Man.* vs. *Langdon*, 24 *Pick.* 53. If acts of the legislature recognize the subsequent and continued existence of the corporation, such recognition will be a waiver of a forfeiture. *The People* vs. *The Manhattan Co.* In the case of *The People* vs. *The Kingstown Turnpike Co.*, 23 *Wend.* 193, it was held, that an act extending the time for the completion of the road was not a waiver of breaches of conditions; for such was not expressly declared to be the intent of the legislature, nor was the intent necessarily to be implied from the act. From this position Mr. Justice *Cowen* dissented, and held that a statute expressly giving time to complete the road was equivalent to a renewal or confirmation of the original charter.

In the present case, the legislature did not expressly declare that they recognized the corporation as in existence, or confirmed its privileges, but we think no other construction can be given to their proceedings. It is a reasonable doctrine, that a breach of condition may be waived. It is an important element in the law relating to landlord and tenant. In *Goodright* vs. *Davids*, *Cowp.* 803, Lord *Mansfield* observed that forfeitures are not favored in law, and where the forfeiture is once waived the court will not assist it. *Coon* vs. *Brickett*, 2 *N. H. Rep.* 163 ; *Doe* vs. *Pritchard*, 5 *B. & Ad.* 765. There is as much reason for considering the acts of a legislative body as a waiver of a forfeiture, as there is for giving that effect to the act of a landlord. The State can claim no exemption from the ordinary rules which govern contracts, and there is not to be one law for them and another for private persons. The legislature accepted the accounts laid before them in 1830, and the subsequent years, as sufficient and satisfactory; that is, they were satisfied with the accounts as a sufficient compliance with the charter. The act of 1833 is an equally clear waiver of a forfeiture. Notwithstanding what had occurred, they

authorized the corporation to alter the route of their road.   The act is susceptible of no other construction in this regard, than that the legislature intended to waive any forfeiture consequent on the prior omissions of the corporation.   If they had intended to insist on any forfeiture, the act certainly would not have been made.   The act was intended to be beneficial to the corporation. But it would not have been so unless they retained the other corporate powers necessary to enable them to carry into effect the purposes of the act.   We are, therefore, of opinion that the rejoinder is a sufficient answer to the replication, and that upon the demurrer there must be

*Judgment for the defendants.*