## SEWALL'S FALLS BRIDGE *v.* FISK & NOR-CROSS.

*Nonfeasances* and *malfeasances*, by which an act of incorporation, would, by the terms of the charter, become forfeited, cannot be inquired into collaterally, or to defeat a private action brought by the corporation, although the charter might, upon proper proceedings had by the State, become forfeited thereby.

Where the charter of a bridge company provided, that if the corporation should be destitute of a bridge for the term of two years, the charter should be void, and an action was brought by the corporation for damages done to the bridge, *held*, that evidence by the defendants, that the corporation had been destitute of a bridge for two years, was inadmissable.

Evidence, to be competent, must be confined to the point at issue; and where an action was brought for damages done to a bridge, caused by the defendants putting a large quantity of logs into the river and carelessly and negligently running the same against the plaintiffs' bridge,—*held*, that evidence of the amount of lumber at the head of the stream, and that it could not be got to market in any other way than that practised by the defendants, was inadmissable. *Held*, also, that evidence of the usage and custom, in running logs in the State of Maine, was likewise incompetent.

Sewall's Falls Bridge *v.* Fisk & Norcross.

Where the plaintiffs' toll-bridge was carried away, through the fault of the defendants, — *held*, that the damages recoverable, would be the value of the superstructure destroyed, and the loss of the tolls during the time reasonably necessary to re-build it.

After a verdict for the plaintiff, judgment will not be arrested, unless the record shows a clearly defective cause of action. Every intendment is to be made in favor of the declaration; and whatever is implied in, or inferrible from, the finding of the jury, will be presumed in favor of the verdict.

CASE. The writ contained two counts. The first was as follows : " For that whereas the plaintiffs, at Concord, on the twenty-seventh day of May, 1847, and for a long time prior thereto, were seized and possessed of a certain toll-bridge over the Merrimack river, called Sewall's falls bridge, in the northerly part of Concord aforesaid, and were entitled, and did receive, of divers persons for passing over the bridge, and for the passing over of the teams, carriages, horses and other creatures, large sums of money as toll, to wit: the sum of $1000 per year ; and the defendants, well knowing the premises, but wrongfully intending to injure the plaintiffs, on divers days, from the first day of January, 1845, to the twenty-seventh day of May, 1847, did wrongfully cause to be placed into the stream and current of the river, above the plaintiffs' bridge, in Concord, and in other towns northerly thereof, large quantities of logs, timber, trees, masts, and other lumber, to wit : ten millions of logs and lumber ; and did then and there, carelessly and negligently, permit the same to accumulate and dam up the river, above and against the bridge, and did neglect then and there, properly to drive the logs, trees and lumber, and to keep them clear of said bridge, whereby the same logs, trees and lumber became and were by the defendants' neglect aforesaid, piled up and lodged against the said bridge, to wit: on the twenty-seventh day of May, 1847, and on divers other days in the same month of May, by which piling up and lodging of said defendants' lumber aforesaid, against the plaintiffs' said bridge, great damage and injury was wrongfully done, and caused to the plaintiffs' bridge, to wit: the damage of five hundred dollars."

The second count was in these words : " Also, for that where-

as the plaintiffs at Concord aforesaid, on the fifteenth day of May last past, and for a long time, to wit: ten years prior thereto, were possessed and seized of a certain toll-bridge, over Merrimack river in Concord, called and known as Sewall's falls bridge, property of the plaintiffs, for the use and passing over of which bridge, by divers persons and their teams, carriages, horses and other creatures, at sundry times daily, the plaintiffs were entitled and did receive for such use and passing, great profit and advantage, to wit: the sum of five dollars per day, from day to day; and from year to year, to wit: the sum of twelve hundred dollars per year; and the said defendants, at Concord aforesaid, at divers times, on and previous to the fifteenth day of May last past, well knowing the premises, did carelessly and wrongfully cause to be placed into the current of said river above the said bridge, in said Concord, large quantities of trees, logs and other lumber, and did so negligently leave the said trees, logs and lumber, that the same became lodged and entangled together, above and against the said bridge, and the piers thereof, and by such entangling, lodging and pressing of the defendants' said trees, logs and lumber, against the plaintiff's said bridge, so carelessly and negligently suffered by the defendants there to accumulate the said bridge became and was entirely demolished, swept away and destroyed, wholly by the carelessness, negligence and fault of the defendants, to wit: on the fifteenth day of May last past; whereby the said plaintiffs suffered the loss of their bridge aforesaid, of great value, to wit: the value of two thousand dollars, and also suffered the loss of all the tolls, profits, and advantages, which they were wont, and of right ought to receive, for the use and passing aforesaid, of great value, to wit: the further sum of one thousand dollars, to the damage of the said plaintiffs, as they say, the sum of four thousand dollars."

The plaintiffs' charter provided that if the corporation should be destitute of a bridge for the term of two years, the charter should be void. The plaintiffs organized under their charter, and built and maintained a bridge until May, 1849, but have had none since that time. The defendants objected that the corporation had no existence after May, 1851, but the court ov-

erruled the objection. The plaintiffs contended that the defendants negligently caused or allowed very great accumulations of the defendants' logs, against and above the plaintiffs' bridge, and that the injuries complained of arose from this cause. The defendants proved in what quantities and manner they run their logs, and then proposed to show that there is a large amount of timber at the head waters of the Merrimack, and that it cannot be taken to market, without costing more than its value in market, in any other mode than that which they practised; but the court excluded the evidence. The defendants also offered to prove the usage and custom in running logs in the State of Maine, but the court rejected the evidence.

Upon the subject of damages, under the second count, the court instructed the jury, that the rule was, the actual damages that the defendants had caused the plaintiffs to suffer; which, in this case, would be the value of the bridge, or so much of it as was carried away and lost to the plaintiffs, and the loss of tolls consequent upon the loss of the bridge; but that the plaintiffs could not recover for tolls beyond such time as was reasonably necessary to re-build the bridge.

The jury returned a verdict for the plaintiffs, and assessed damages under both counts, and the defendants moved to set the verdict aside, on account of the rulings and instructions of the court.

The defendants also moved in arrest of judgment, because that in the first count the mode and nature of the injury is not stated, and the second count does not state the time of the acts complained of.

*Bellows*, for the defendants.

1. It must appear that the injuries happened without the fault of the plaintiffs; and one question was, whether the bridge was suitable for that place. This was purely a question of fact for the jury, and to determine it properly they ought to know something of the extent of the lumber operations, and, whether permanent or but temporary. This would have a decided and legitimate bearing upon the structure required. The evidence

offered, then, should have been received, as showing the magnitude and permanent character of the interests of navigation, to be considered in determining what sort of bridge was reasonably required. It stands upon the footing of the liability of towns for defects in highways. In these cases, whether the highways are in suitable repair or not, may depend upon the character of the road, the amount of travel, and how much used. *Hall* v. *Richardson,* 2 Wood. & Minot's N. S. Rep., 337.

If this be so, evidence tending to show the travel permanent, rather than temporary, would be admissible. And this is precisely this case. It is just as relevant to show it is permanent, as to show the amount.

2. As to the evidence of the usage, what was prudent management was a question of fact for the jury. The defendants are required to use ordinary care, such care as prudent men use. What is such care, is to be determined by experience in the conduct of such business. If the jury were not informed, as was likely to be the case, in regard to this business, then we can see no objection to the evidence of the usage. In *Hall* v. *Richardson,* before cited, it was held that the ordinary care used by towns, was the test in deciding whether there was negligence. So the ordinary care used by prudent lumbermen in their business is the test here, and as the jury were not likely to know about it, the evidence ought to have been received.

3. The instruction that the damages would be the value of the bridge and the loss of the toll during a reasonable time for re-building, was erroneous, as we think. The bridge was wholly destroyed and has not been re-built. The tolls might be considered in fixing the value, as the value of other estates might be affected by the rent, but having been ascertained, the tolls could not be added. If partially destroyed or repaired, the jury might have found the cost of repairs, and added the tolls lost by it; but could not add the tolls to the value of the bridge.

4. The first count alleges, in substance, that the defendants' logs piled up against the plaintiff's bridge and injured it to the amount of $500. This we hold to be bad, on the ground that it is an indefinite statement admitting of almost every proof— a

total destruction, or any injury to any portion of the bridge.   1
Chit. Plead., 590 ;   11 Price Rep., 235 ;   *Sawyer* v. *Whittier,* 2
N. H. Rep., 315 ;  *Davis* v.  *Clough,* 8 N. H. Rep., 157.

The defect is not aided by verdict.   1 Chit. Plead., (Am.
Ed.,) 673, and notes ;  *Addington* v. *Allen,* 11 Mod. Rep., 375 ;
*Williams* v. *Hingham and Quincy Turnpike Co.,* 4 Pick. Rep.,
341 ;  *Harding* v.  *Cragin,* 8 Verm. Rep., 509.;  *Griffin* v.
*Pratt,* 3 Conn. Rep., 513.

*Fletcher,* with whom was *Pierce,* for the plaintiffs.

1.   As to the existence of the corporation after May, 1851,
we cite Rev. Stat., chap. 203 ;  *State* v. *Fourth N. H. Turn-
pike,* 15 N. H. Rep., 162 ;  *Pierce* v. *Somersworth,* 10 N. H.
Rep., 375.   The word *void* means only voidable in this charter,
as it often means in statutes and reports.    *Wright* v. *Steele,*
2 N. H. Rep., 51 ; *Blanchard* v.  *Goss,* 2 N. H. Rep., 494.

2.   As to the exclusion of the evidence relative to the amount
of lumber and cost of getting it to market, it is sufficient to say,
that if these facts had been so proved or admitted, it would have
been wholly immaterial to the issue.

The plaintiffs alleged careless and negligent management of
the defendant's lumber in the Merrimack, whereby their bridge
was damaged at one time and wholly destroyed at another, and
the jury have found the facts as alleged, and assessed the dam-
ages.   It is no justification, or sufficient answer for the defend-
ants to say, that there is much lumber north that can profitably
be got to market only by this public highway.   They are bound
to use the river with a proper regard to the protection of bridges
and other structures on it ; otherwise the timber can remain
where it grew.   The maxim, " *Sic utere tuo ut alienum non
laedas,*" well applies here.

3.   The defendants proved in what quantities and manner
they run their logs, and the witnesses respectively stated what
experience they had had, and what the defendants and their
agents had had, both in Maine and New-Hampshire, prior to the
damage complained of.   Beyond this it is not easy to conceive
what the usages and customs of lumbermen in Maine can have

to do here. The jurors of Merrimack county, from their knowledge of the business and the lumbering interests here, were more likely to form a correct judgment as to what was a proper and prudent use of the Merrimack, than the lumbermen from the unsettled regions of Maine could have done. Even in this State the usages and the legislation on this subject have been subject to considerable variation. *Scott* v. *Wilson*, 3 N. H. Rep., 321.

4. The first court might have been bad on special demurrer, but the defect is cured by the verdict. It is one of the common and familiar cases, of a good title or cause of action defectively stated, and not a defective cause of action. *Gray & Osgood* v. *James & al.*, Peters C. C. Rep., 476 ; *Renner* v. *Bank of Columbia*, 9 Wheat. Rep., 581 ; *Dobson* v. *Campbell*, 1 Sumner's Rep., 319 ; *Rushton* v. *Aspinwall*, 2 Doug. Rep., 679 ; 1 Chit. Pl., (Am. Ed.) 673, and notes ; *Ingersoll* v. *Jackson*, 12 Mass. Rep., 505 ; *Livermore* v. *Boswell*, 9 Mass., 495 ; *Coffin* v. *Coffin*, 4 Mass., 457. As to the exception to the second count, it is supposed to have been inadvertently taken. The time of the acts complained of is twice stated, once near the beginning and again near the close of the count, as is sufficiently apparent on inspection.

EASTMAN, J. The plaintiffs, by their charter, were empowered to build a bridge where the one destroyed had been erected. This gave them the right to make the bridge ; but in such a manner as not to interfere with the rights of the public to the use of the river. The public had the right to the free navigation of the river for such purposes as it had previously been used ; and they also, as well as the plaintiffs, had an interest in the erection of the bridge, that they might be accommodated in crossing the stream. The plaintiffs and defendants, then, had both of them rights that could be affected by the conduct of each, and this action is brought, not for any ordinary and legal use of the stream, but for injuries occasioned by the careless and negligent use of it.

Upon the trial of the case, it was in the first place objected,

that the corporation had no existence after May 1851, and could not therefore maintain the action. This objection was founded upon a provision of the charter that if the corporation should be destitute of a bridge for the term of two years the charter should become void, coupled with the fact that no bridge had been in existence after May, 1849.

If this proceeding were an information filed against the plaintiffs to procure the forfeiture of their charter, the want of a bridge might, unexplained, be a good cause for vacating the grant ; but the question of forfeiture cannot be enquired into in this collateral way. The grant is from the State, and the proceedings to divest the grantees of their charter must be by the same power that created it ; and until that be done by the proper and legitimate action of the State authorities, it is not competent to show any matters affecting the forfeiture of the charter as a defence to private actions brought by the plaintiffs. *Bear Camp River Co.* v. *Woodman,* 2 Greenl. Rep., 404; *Chester Glass Co.* v. *Dewey,* 16 Mass. Rep., 102 ; *Rex* v. *Pasmore* 3 Term. Rep., 244 ; *Bank of Niagara* v. *Johnson,* 8 Wend. Rep., 645 ; *People* v. *Manhattan Co.,* 9 Wend. Rep., 382 ; *Slee* v. *Boom* 5 Johns. Ch. Rep., 381 ; *Irvine* v. *Lumberman's Bank,* 2 Watts & Serg. Rep., 190 ; *Commonwealth* v. *Union Ins. Co.,* 5 Mass. Rep., 230 ; *State* v. *N. H. Turnpike,* 15 N. H. Rep., 162 ; *Pierce* v. *Somersworth,* 10 N. H. Rep., 369.

The defendants next excepted to the ruling of the court in excluding certain evidence offered by them. The plaintiff's evidence tended to show that the defendants carelessly and negligantly caused or allowed large quantities of their logs to accumulate against and above the plaintiff's bridge ; or, in other words, that the injuries complained of were caused by a careless and negligent use of the river. This was the issue ; and the defendants having proved in what quantities, and the manner in which they run their logs, proposed further to show that there is a large amount of timber at the head waters of the Merrimack and that it cannot be taken to market, without costing more than its value in market, in any other mode than that which they practised. This evidence was ruled incompetent ; and we

think correctly so. It does not appear that the lumber at the head of the Merrimack was the defendant's, nor that the owners of it wished to cut and run it to market in the manner in which the business was conducted by the defendants. But even if it had all been theirs, the evidence would be irrelevant, for the prospective extent of their interests and the contemplated magnitude of their operations, could not give them any special privilege to manage their business in a careless and negligent manner so as seriously to affect the rights of others. The defendants were very properly permitted to show the manner in which they actually conducted their business on the river. This applied directly to the issue, and from it the jury could learn whether the business had been discreetly managed, with a due regard to the rights of others, or whether it had been prosecuted in a careless and negligent manner. The mode too in which the injury itself was committed; the particulars and extent of the damage must also have been laid before the jury, and these and other pertinent matters, and not the forests at the sources of the Merrimack, must be the legitimate evidence to show whether there was carelesness or not. We cannot regard the evidence offered as having any tendency to negative the allegations in the plaintiff's writ, or as disproving in any way the plaintiff's right to recover. The doctrine which is attempted to be established on the authority of *Hall* v. *Richardson,* cited by the defendant's counsel, cannot, we think be legitimately applied to this case.

The defendants also offered to prove the usage and custom in running logs in the State of Maine, but the court rejected the evidence. Much that was said in the preceding paragraph applies with equal force to the question of the admissibility of this evidence. It was not material to the point at issue and could have no tendency to aid the jury in arriving at a correct decision of the question before them. What custom and usage may have tolerated or sanctioned in Maine, in the particular matter of the running of logs, could not be held binding here, unless it had been adopted here and become so general as to be known and established. This we do not understand to be pretended. Evidence, in order to be competent, must correspond with the

allegations in the pleading and be confined to the point in issue. 1 Greenl. Ev., §§ 50, 51, 52.

The instructions of the court, in regard to the damages, were correct. The plaintiffs were entitled to recover the actual damages which the defendants had caused them to suffer; and those damages would be the value of the superstructure or so much of it as was carried away and lost to the plaintiffs, and the loss of the tolls during the time, that was reasonably necessary to repair or re-build. The distinction suggested in the argument cannot exist; for if the plaintiffs would be entitled to the costs of the repairs and the tolls lost, in case of a partial destruction, they must be equally entitled to the cost of rebuilding and the loss of tolls in case of a total destruction. If it were not so, a partial destruction and the tolls might amount to more than the loss of the whole bridge, and thus the greater damages be recovered for the less injury. When the court speaks of the value of the bridge, we understand them to mean the value of the superstructure merely; and not the value of the superstructure and the franchise of taking tolls united. Were the latter true, the argument might hold good.

In addition to the exceptions taken to the rulings and instructions of the court, a motion is also made, in arrest of judgment, for alleged defects in the first count of the declaration.

After trial and verdict for the plaintiff, judgment will not be arrested unless the record shows a clearly defective cause of action. Every intendment is to be made in favor of the declaration, and whatever is implied in or inferrible from the finding of the jury, will be presumed in favor of the verdict. The defects must be substantial and incurable or the judgment will not be arrested. Hence all formal defects and even some which would have been bad on general demurrer, will be cured by the verdict. Such is the undoubted doctrine of the books. Gould's Pleadings, 496; *Warren* v. *Litchfield,* 7 Greenl. Rep., 63; *Addington* v. *Allen,* 11 Wendell's Rep., 375; *Reed* v. *Chelmsford,* 16 Pick. Rep., 128; *Crocker* v. *Whitney,* 10 Mass. Rep., 316; *Sawyer* v. *Whittier,* 2 N. H. Rep., 315; *Emerson* v. *Lakin,* 10 Shepl. Rep., 384; *Morey* v. *Horman,* 10 Verm.

Rep., 365; *Miltenberger* v. *Schlegel*, 7 Barr's Rep., 241; *Vaughn* v. *Gardner*, 7 B. Monroe's Rep., 326; *Simpson* v. *Vaughan*, 2 Strobh. Rep., 32. Any other doctrine would often work great hardship and do much injustice. If the general terms are broad enough to comprehend the proof, it should be sufficient; and if enough appears upon the declaration to show that the plaintiff has a good cause of action, all defects in the statement of it should be taken advantage of by demurrer, or they will be regarded as cured by the finding of the jury. *Ingersoll* v. *Jackson*, 9 Mass. Rep., 495; *Richardson* v. *Eastman*, 12 Mass. Rep., 505; *Walpole* v. *Marlow*, 2 N. H. Rep., 385; *Dobson* v. *Campbell*, 1 Sumner's Rep., 319; *Worster* v. *Canal Bridge*, 16 Pick. Rep., 341; *Cornelius* v. *Malloy*, 7 Barr's Rep., 293; *Cole* v. *Harman*, 8 Sm. & Marshall's Rep., 562; *Porter* v. *Kepler*, 10 Ohio Rep., 127.

The ground for arresting this judgment, as stated in the case, is "because the mode and nature of the injury is not stated." The count sets forth in substance that the plaintiffs had a bridge across the river; that the defendants put large quantities of logs into the stream above the bridge, and carelessly and negligently permitted the same to accumulate and dam up the river above and against the bridge; that they neglected properly to drive the logs and keep them clear of the bridge, and that they were, by the defendants neglect, piled up and lodged against the bridge, by which piling and lodging against the bridge, great damage and injury was caused to the bridge. It will be seen that the allegations are general, and the count might have been bad upon demurrer; but the statement shows sufficient to indicate a cause of action. There is no vital defect. The very fact that the terms used are general and the statements broad, would make it the more easy for the court to infer, that the particular mode and manner in which the injury happened was shown to the jury, and that the special nature of the damages were proved, especially as no exception comes to us in the case, upon evidence which we may well suppose to have been offered upon these points. We think that the most that can be objected against this count is, that it is a cause of action defectively stated, and not a defective cause.

The exception to the second count is, that it does not state the time of the acts complained of.   An inspection of the count however, shows the fifteenth of May, prior to the date of the writ, to be the time stated.   It is not done with that definiteness which is sometimes introduced into writs, but is abundantly sufficient after verdict.   Time, unless it be matter of essential description in the cause of action, will, after verdict, be presumed to have been proved, and the want of it in the count will not be matter in arrest of judgment.   Gould's Plead., 499; *Stockton* v. *Bishop*, 4 Howard's U. S. Rep., 155; *Marsh* v. *Blythe*, 1 McCord's Rep., 360; *Warne* v. *Anderson*, 7 Wis. Rep., 46; 3 Black. Com., 394; 2 Salk., 662; 5 Mod., 287. All of the exceptions must be overruled and there must be

*Judgment on the Verdict.*