IN THE

## Supreme Court of the State of Georgia,

## AT ATLANTA,

## MARCH TERM, 1861.

PRESENT—JOSEPH H. LUMPKIN,  
RICHARD F. LYON,  } JUDGES.  
CHARLES J. JENKINS,

CONSTANTINE WOOD, plaintiff in error, *vs.* COOSA AND CHATTOOGA RIVER RAILROAD COMPANY, defendant in error.

1. The book of minutes or original entries kept and made by Commissioners appointed by the Legislature for the organization of a corporation, is admissible as evidence in a suit against a subscriber for stock in such company.

2. The charter of the Coosa and Chattooga River Railroad Company provides that "no subscription (for stock in such company) shall be received and allowed, unless there shall be paid in to the Commissioners, at the time of such subscription, the sum of five dollars on each share subscribed." In a suit by the corporation against one of the subscribers for stock, for installments on his subscription, who had not paid in the five dollars a share at the time of subscribing: *Held*, That such subscription was void, and could not be enforced, although the subscriber had promised to pay the installments as called for—had

XXXII—18.

attended and voted as a stockholder in meetings of the stockholders in said company.

3. A subscriber for stock in a corporation with an unconditional charter, will not be permitted, in a suit against him by the corporation for the recovery of installments on his stock subscription, to inquire into, and contest, the validity of the charter, or the right of the corporation to its use, although he may, to the legality and validity of his individual sub-subscription.

Complaint in Walker Superior Court. Tried before Judge WALKER, at the February Term, 1861.

The Coosa and Chattooga River Railroad Company brought their action in Walker Superior Court, against Constantine Wood, to recover the sum of $75 00, the installments due on five shares of stock in said company, subscribed by said Wood.

Defendant pleaded the general issue, and, in addition thereto, that the company had not complied with their charter; that he subscribed his stock previous to the time of organization of said company, and that a large portion of its stock has since been illegally transferred to another charter, without the consent of the stockholders.

The case was tried at the February Term, 1861. Plaintiff read to the jury, from a small book, the following paper:

GEORGIA—WALKER COUNTY:

We, the undersigned subscribers, agree to pay to the Commissioners of the Coosa and Chattooga River Railroad Company the number of shares of stock annexed to our names, at one hundred dollars per share, when said company shall be organized, in such installments as may be called for by the directors. Sept. 5, 1856.

CONSTANTINE WOOD,
JAS. M. EASTERLING,
R. M. POWELL.

Plaintiff then introduced THOMAS E. PATTON, to whose competency defendant objected, because it appeared from the preliminary examination of the witness that he was a stockholder in the company. The objection was overruled, the

Wood *vs.* Coosa and Chattooga Railroad Company.

Court holding the witness competent for the purpose for which he was offered, and he testified that a certain book shewn to him, was kept by the commissioners appointed under the act of the Legislature organizing the company, for the purpose of recording their proceedings as such commissioners.

Plaintiff then introduced in evidence the following extracts from the book to which Patton's testimony relates, to-wit:

LaFayette, Ga., 3d Nov., 1852.

Two of the Commissioners for Ringgold, R. A. Ramsay and M. Dickson, met with the Commissioners of La Fayette, and elected James Hoge in place of R. N. Acock, resigned, and appointed the first Monday in December next as a general meeting.

THOS. E. PATTON, Sec'ry pro tem.

LaFayette, Ga., Nov. 7, 1853.

At a meeting of the Commissioners for La Fayette this day, Spencer Marsh resigned his office as commissioner, and Edwin Dyer was appointed to fill the vacancy occasioned by his resignation.

JAMES HOGE, Sec'ry pro tem.

State of Georgia—Walker County:

We, whose names are hereunto subscribed, agree to pay to the Commissioners of the Coosa and Chattooga River Railroad Company the number of shares annexed to our names, at one hundred dollars each share, this 15th Oct., 1856.

|  | NO. SHARES. |
|---|---|
| James Hoge, | 182 |
| A. W. T——, | 182 |
| A. Shaer, | 182 |
| John Caldwell, | 182 |
| Dan'l Major, | 182 |
| John Gray, per Edwin Dyer, Ag't, | 182 |
| Eli Gorse, | 182 |
| A. B. Culberson, | 182 |

GEORGIA—WALKER COUNTY:

We, the undersigned, Commissioners of the Coosa and Chattooga River Railroad Company, do hereby certify that we have proceeded according to the provisions of said charter, and have received the above subscriptions of stock from those whose names appear above, with the number of shares to their names annexed, each share representing one hundred dollars. Given under our hands and official signature, this 15th October, 1856.

T. E. PATTON, Com'r,
JAMES HOGE, Com'r,
EDWIN DYER, Com'r.

GEORGIA—CHATTOOGA COUNTY:

We, whose names are hereto subscribed, agree to pay to the Commissioners of the Coosa and Chattooga River Railroad the number shares annexed to our names, at one hundred dollars each share, this 16th October, 1856.

| NAMES. | NO. SHARES. | |
|---|---|---|
| Edwin Dyer,.................................... | 182 ......18,200 | 00 |
| J. E. Wardlaw, .............................. | 182 ......18,200 | 00 |
| I. R. Gamble,.................................. | 182 ......18,200 | 00 |
| | 546 | |
| Subscribed to Walker Commissioners....1,456 | | |
| | 2,002 | |

According to the provisions of said charter, and have received the above subscription of 546 shares, at one hundred dollars each, making, with the subscription received by the Commissioners of Walker county, two thousand and two shares, it being the requisite amount of said charter for organization.

A. P. ALLGOOD, Com'r,
CHARLES PRICE, Com'r,
BENJAMIN BRANNON, Com'r.

LaFayette, 18th November, 1856.

According to previous notice published in the *Southerner*, a newspaper published in the town of Rome, Georgia, and also in the *Courier*, in the same place, in terms of the charter, the stockholders of the Coosa and Chattooga River Railroad Company met for the purpose of organizing said company, and it appearing that the requisitions of the charter have been complied with in the subscription of stock, and that the stock was represented, we proceeded to hold an election for the first board of directors of said company, and upon counting out the votes, the following persons were elected: Edwin Dyer, John D. Gray, Augustus B. Culberson, Lewis R. Gamble, James C. Wardlaw, Daniel Major, James Hoge. Given under our hands, etc.

EDWIN DYER, Com'r,
JAMES HOGE, Com'r,
T. E. PATTON, Com'r.

*Resolved,* That the treasurer collect an installment of five per cent. upon the stock of our railroad company, and that the secretary of the board proceed to advertise for the payment of the same, in terms of the charter.

*Resolved,* That we call for an installment of ten per cent., to be due and payable on the first Wednesday in January next, and that the secretary publish notice of said call, in terms of the statute.

To the introduction of all and every portion of these extracts, except the resolutions in regard to the instalments, the defendant objected; the objections were overruled and the evidence admitted.

Plaintiff then read in evidence certain newspapers, shewing publication of the notice of the calls for payment of stock.

GREEN G. GORDON testified: That the plaintiff had an office and place of business in La Fayette; had organized as a company and commenced work in constructing a railroad about August or September, 1858, and has continued to work, off and on, ever since; have graded some seven or

eight miles of the road, at an expense, he thinks, of $15,000 or $20,000.

A. H. MIRZE testified: That the day before the return day to the Court at which defendant was sued, he was going to defendant's house to serve the writ in this case, and met the defendant, who seemed to know what witness was going to see him for, and stated to witness that he was then going to town to pay up his stocks, or what was due on his stock, when witness told him if he would go and pay up like a man he would not charge any cost.

The testimony was objected to by defendant, and the objection overruled.

Plaintiff here closed.

Defendant introduced as a witness, THOMAS E. PATTON, who testified, on being shewn the book, that the paper therein signed by defendant, Esterling & Powell, was in the handwriting of Mr. Hoge, and that witness acted as commissioner when said paper was executed or subscription made, and that no money was paid at that time or any other in his knowledge.

Defendant closed, and the Court charged the jury as follows:

1. The defendant does not deny subscribing the agreement introduced in evidence, but insists that he has two grounds of defense: 1st. That there is no such corporation as the Coosa and Chatooga River Railroad Company; and 2d. That if there be such a corporation he is not a member of it, not having done anything sufficient to bind him to pay the stock.

2. The burden of proof is on the plaintiff in these two issues. When the plaintiff introduced the act of incorporation; the record of the proceedings of the charter commissioners certifying that all the requisites of the charter had been complied with; the election of officers by the stockholders; the books of the corporation containing an account of their proceedings, and proved a user of the privileges of the franchise; that the company had a place of business to carry out the objects for which they were

incorporated, and that the business has been managed by directors so chosen, and that the corporation has gone on and expended considerable sums in forwarding the business of the corporation, a *prima facie* case of the existence of the corporation according to the terms of the charter is shown, which, if not rebutted, would be sufficient to authorize you to find the issue in favor of the plaintiff.

3. Something has been said about the recitals in the certificates by the commissioners, and I have been requested to charge that they are no evidence in this case. This I can not do. All of the certificates are evidence, and when they say the requisites of the charter, preparatory to organization, were complied with, this is *prima facie* evidence of the facts so recited.

4 Again, defendant insists that the corporation may have a legal existence, yet he is not a member of it; because, at the time of subscribing, he did not pay $5 00 per share on the amount subscribed; and notwithstanding he agreed to pay the five shares in such instalments as may be called for by the directors, his failure to pay the five per cent. rendered his undertaking nugatory, and relies upon the case of Napier *et al.* vs. Poe *et al.*, 12 Ga. R., 170, as an authority in his favor, and if all of the opinion delivered in that case be law applicable to this case, defendant is protected by it.

The plaintiff says that the portion of the opinion relied on is mere *obiter* and cannot be applied in this case under any proper view of the decision, because that was a contest between two sets of subscribers as to which should be allowed to subscribe for the stock under a *bank* charter, and that was the only question properly before the Court for adjudicaion. And again, as said by the Judge of the Supreme Court, in Mitchell vs. Rome Railroad Company, 17 Ga. R., 51, there is not the same reason why the payment of some part of the stock in a railroad corporation should be made a condition precedent to the corporation going into operation that there is that the payment of some part of the stock of a banking corporation should be made a condition precedent to such a corporation going into operation;

for if a bank fails the public suffer—if a railroad company fails the stockholders suffer.

Plaintiff further insists that the payment of the five per cent. was a provision in its favor, and if the commissioners and the corporation saw proper to receive and allow the subscription without it, and affirms and accepts it as valid, that defendant can not set up this indulgence to himself as a release, because there is nothing in its character which makes such subscription void.   On this subject I charge you that it is no defence to this action that the commissioners waived the necessity of defendant's paying the five per cent., and that it does not lie in his mouth to say that his subscription, so received and allowed by the commissioners, is for that reason void.

5. Here it is not denied that the plaintiff has gone forward in making the road, several miles have been graded at a considerable expense, various rights have accrued and obligations been incurred, and it is admitted that defendant, when sued, said he was going to La Fayette to pay the "calls" on his stock, and was thus recognizing both the existence of the corporation and his liability to pay this stock.   These facts, not controverted by counsel, are proper to be taken into consideration in deciding whether the defendant is liable in this case or not.

6. Counsel for defendant request the Court to charge the jury that although they may believe, under the instructions given them by the Court, that the subscription of defendant was a good one and constituted him a subscriber, yet before the plaintiff had a right to call on the defendant to pay up any portion of his stock so subscribed by him, the plaintiff must prove to your satisfaction that two thousand shares of the capital stock of said company, including that subscribed by defendant, had been subscribed for, and $5 0' on each share paid at the time of subscription.   I can not give this charge.

To the charge of the Court and the refusal to charge as requested, defendant excepted.

The jury found a verdict in favor of the plaintiff and defen-

Wood *vs.* Coosa and Chattooga Railroad Company.

dant filed his bill of exceptions, complaining of the rulings of the Court in admitting the evidence objected to, the charge of the Court as given, and the refusal to charge as requested by defendant.

DOUGHERTY, DABNEY, FARRIS, for plaintiff in error.

UNDERWOOD, WRIGHT, CULBERSON, for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

This was an action by the Coosa and Chattooga River Railroad Company, in the Superior Court of Walker county, against Constantine Wood, for the sum of $75 00; two installments of five and ten per cent. on five shares in the capital stock of said company, for which said Wood is alleged to be a subscriber therein.

On the trial, the plaintiff in said action offered in evidence the original book, kept by the commissioners appointed by the charter for organizing said company, for the purpose of entering and recording therein their proceedings as such commissioners, together with the acts, resolutions and proceedings of said commissioners, as recorded therein; said book having first been identified as the book of original entries, by the suppletory oath of Thomas Patton, one of the stockholders, (whose testimony for that purpose was objected to by defendant, but waived in the argument before us.) The defendant objected to the entries therein as evidence against him. The Court overruled the objection, and that is the first ground of error complained of.

1. We do not think the objection well taken. This was the book or minutes of the action of the commissioners, appointed in the charter for the organization of the company. They were required to keep books of subscription, sum up and certify the amount of the same, to organize the company, and make a record of their proceedings in the election of the board of directors. These entries, put in evidence, are the acts done by said commissioners, in their official

capacity, and in pursuance or execution of their powers, vested in them by their charter, and could not have been preserved or proven well in any other way.   The rule of evidence on this subject is, that entries made by third persons, in the discharge of their official duties, are admissible as evidence, when the entry is one that it was the duty of such person to make, or when it belonged to the transaction, as part thereof, or its usual and proper concomitant.   It must speak only to that which it was his duty or business to do, and not to extraneous or foreign circumstances.   The party making it must have had competent knowledge of the fact, or it must have been part of his duty to have known it.   There must have been no particular motive to enter that transaction falsely, more than any other, and the entry must have been made at or about the time of the transaction recorded.   In such cases the entry is admitted as original evidence, being part of the *res gestæ.*   Here the entries put in evidence were such as were the duty of the commissioners to make, and which belonged to the transaction as parts thereof.   They speak only to those things which were their duty to do.   They not only had knowledge of the facts, but it was their duty to know- them, and there was no particular motive that this Court can see, or has been suggested, to enter these transactions falsely, more than any other, and they were made at or about the time of the transaction recorded.   There the entries relate to the meetings and actions of the commissioners as such, to the subscriptions of stock, the amount of the same, and the election and organization of the board of directors and the company—just what the charter required of them as commissioners.

The remaining exceptions are to the charges, and refusal to charge on request of counsel for defendant.

The defendant relied on two grounds of defense to the action:

1. That his individual subscription had not only not been made in terms of the charter, but that it had been received and allowed by the commissioners in direct violation of its express provisions in this, that the sum of five dollars on

each share had not been paid in to the commissioners before such subscription had been received and allowed, and that such subscription was therefore not obligatory on them, and could not be enforced by the corporation.

2. That the company had not been organized in pursuance of the provisions of the charter, by the actual subscription of two thousand shares in the capital stock of said company in · terms of the charter before its organization by the commissioners, and, therefore, the plaintiff could not recover : in other words, that the corporation were illegally exercising the franchise of this legislative grant of incorporation.

The first position goes only to the liability of the defendant to pay for his stock ; and the second, to the validity of the charter.

2. As to the first position : The provisions of the charter on this subject are as follows : " *and no subscription shall be received and allowed, unless there shall be paid to the commissioners, at the time of such subscription, the sum of five dollars on each share subscribed,* for which the commissioners shall give to the subscriber a certificate, setting forth the number of shares taken by each subscriber, and amount per share paid them." It being in proof that this provision of the charter was not complied with by the defendant at the time of subscription, or since ; in fact, the amount then required to be prepaid formed a part of the sum for which this suit was brought. The Court charged the jury, that " it is no defence to this action that the commissioners waived the necessity of defendant's paying the five per cent., and that it does not lie in his mouth to say that his subscription, so received and allowed by the commissioners, is, for that reason, void." Was that charge right ? We think that it was not. The commissioners were the appointed agents of the Legisture to open books and receive subscriptions to the capital stock of the company ; but in the exercise of this power they were limited to the terms and manner of subscription prescribed by the Legislature, from which the power was derived, and a subscription taken or allowed by them in violation of their instructions, as contained in the grant, is void

and of no effect whatever. Here the commissioners were expressly prohibited from receiving and allowing any subscription, unless the sum of five dollars on each share was paid to them at the time of subscription. Yet this subscription was received and allowed without the payment of five dollars on each of the shares at the time of subscription, or at any other time before or since. Such subscription, therefore, was not only without authority, but in direct violation of express instructions, and is, therefore, void. It does not invest the subscriber with any of the privileges of a corporator, nor does it render him liable therefor as a subscriber, stockholder, or otherwise.

The principle here stated is expressly recognized in Poe vs. Napier, 12 Ga., 182. That was a contest between two sets of subscribers to the capital stock of the Manufacturers' Bank of Macon. Robert Collins and others, the first subscribers in point of time, subscribed for the whole amount of the capital stock, paying to the commissioners ten per cent. in drafts, at thirty days, on New York, and partly in drafts on the banks in Macon, which drafts, when due, were paid in specie. Leroy Napier and others, the second set, subsequently offered to subscribe for the whole amount, tendering to the commissioners ten per cent. in cash. The charter provided, amongst other things, that: "When the amount of $250,000 00 shall have been subscribed, *bona fide,* and the sum of ten per cent. thereon shall have been paid in gold or silver, or the bank notes of this State paying specie," an organization was authorized. Napier and his associates claimed that the first subscription was illegal, because, under the act of incorporation, it was the duty of the commissioners to disallow all subscriptions, unless accompanied by the actual payment of money, or a tender of it in gold, silver, or the notes of specie-paying banks. This brought up the question involved in this case directly for the adjudication, and this Court, on the point made, says: "If, indeed, it is true that the act requires the money to be paid at the time when the subscription is made, then I admit that there is no escape from the conclusion of the counsel for the plaintiff in error.

For, if that is required, the subscription would be void, no matter what other evidence is furnished in the record that the subscription is *bona fide.*" But the Court held, that the subscription and payment of ten per cent. were not required by the act to be done simultaneously, and that the subscription was not therefore void. This opinion was not an *obiter dictum,* but was an adjudication, necessarily, of the point involved, and we reiterate and re-affirm that decision as a sound exposition of the law on this question. Again, in Mitchell vs. The Rome Railroad Company, 17th Ga., 574, the Court re-asserted the same principle. In that case the note sued upon was given in place of payment of cash of the first installment for stock. The 4th section provided: "Upon the subscription for shares in said stock, the subscribers shall pay the sum of five dollars upon each share subscribed for by such subscribers: *Provided,* that said company may commence the construction of their railroad and boating so soon as three thousand (shares) shall be subscribed." Mitchell insisted, that as the five dollars on each share had not been paid in before organization, the organization was illegal, and the acts done under the same not binding." The Court held, that the subscription might be made at one time, and the payment of five dollars per share at another: that the payment of the five dollars per share was not a condition precedent, either to the existence of the company as a corporation, or to its right to commence business. "Doubtless," says the Court, "if this payment were a condition precedent to organization, the acts done by the company, unless this condition had been complied with, would be void." And void, notwithstanding any subscriber might have participated in them, and given them his sanction, or might have taken part in any pretended organization, and even have become a director under a pretended organization. Here we might end the discussion on this point, but as other adjudications were referred to and relied on in the argument, on both sides, it is necessary that I should notice them, which I will do as briefly as possible:

The first case referred to, and relied on, in support of the

decision of the Court below, is that if Jenkins vs. Union Turnpike Co., 1 Caines N. Y. Rep., 481. In that case suit was brought for the amount of two installments or calls on subscription for stock in the company. The charter required that "every subscriber *shall, at the time* of subscribing, pay in to either of the said commissioners the sum of ten dollars for each share subscribed." This payment had not been made. It was insisted, that a recovery could not be had, because there was no consideration for the promise, the ten dollars not having been paid; that was urged as a distinct objection to the recovery, in connection with the want of consideration. 2. That the commissioners did not give the notice required by the act, to choose directors as soon as one thousand shares were subscribed. 3. That no order of the president, directors and *company*, requiring the payment of the installment in question, was stated in the declaration. 4. That the mode of enforcing subscription for stock prescribed by charter, in case of non-payment, was by forfeiture, and not by suit.

The Superior Court overruling the several objections, held that the subscription was recoverable. Courts since that time have been in great doubt as to the ground on which the Court made that decision. The charter prescribed the form of subscription to be made; and the subscription having been made in that form, the Court says: "We can not discover any ground, on which the promise ought to be considered as void. The subscription was taken by commissioners, who were authorized to receive it, *and in the form prescribed by the act.* That form contains an absolute promise to pay the money to the president, directors, and company. On one side the interest of the company in selling the shares, and the public advantage to be derived from the success of the institution, and on the other the expected profit to accrue from the stock, were sufficient consideration to uphold the promise. By force of the act itself, also, it must be considered as good. The Legislature must also have intended, that it should be obligatory; for else *the formal manner in which it was prescribed to be taken, would be sense-*

Wood *vs.* Coosa and Chattooga Railroad Company.

*less and nugatory.* In relation to the non-payment of the
$10 00 per share, at the time of the subscription, the Court
says, that "the subscription was for the full sum originally
due for each share. The $10 00 on each share were due
immediately, and the engagement with respect to that sum,
was like a note or obligation payable on demand. The con-
tract was complete, and the defendant had a right to tender
the payment of the $10 00 and demand its performance on
the part of the company, who had an equal right to enforce
it against him." Now it must be manifest, that whatever
may have been the ground on which the Court put its
decision, it was not impressed with the conviction that the
subscription was in derogation of the charter, or that the
commissioners violated their duty in receiving the subscrip-
tion without the payment of the $10 00; that was not
regarded as a condition precedent, but that inasmuch as the
subscription was made in accordance with the form prescribed
by the charter, it was a good and valid one. Here, then, is
the difference between that case and the one before us: In
that a form of subscription was prescribed that was followed
by the subscribers. The commissioners were not prohibited,
as in this, from receiving and allowing subscription unless
the $10 00 were paid at the time. The Court, in that case,
regarded the charter as complied with; in this we hold its
plain letter to have been violated. That adjudication, there-
fore, can not be an authority in this case. From the decision
of the Superior Court an appeal was taken in this case to
the Court of Errors, and on the hearing, the judgment of
the Superior Court was reversed, on the ground, that the
subscription was void for the non-payment of the $10 00 at
the time of subscription. The Court says: "The acts to be
performed by the commissioners were merely preparatory to
its (the corporation's) creation. To give effect to their acts,
their power must be strictly pursued. They had no discre-
tion or latitude of action. Their line of conduct was marked
with the utmost precision. They were directed to exact
from the persons who were to be admitted members of the
corporation, both *subscription and payment* as a condition

precedent to their admission. If they omitted either *to sub-scribe*, or *to pay*, they did not come within the terms of admission. If so, the bare act of subscription was wholly nugatory. The subscribers who were to meet, could only constitute themselves such within the intent of the statute by a compliance with the terms prescribed by it. When the corporation was organized, the directors might dispense with the exaction of the first payment. But if they did so, there was no ground for extending the doctrine of relation, to the transaction, so as to bring it within the rules applying to mutual contracts. For if the doctrine of relation is to be applied, it will carry it to a period beyond the existence of the body politic, with whom the contract is supposed to have been made. If the defendant had affirmed the contract, in all time intermediate *the affirmance and the subscription*, the contract had been suspended. Now it is a well established rule, that to give effect to mutual contracts, a unity of time as to their commencement, so as to bind both parties from the same point of time, is essential. It did not constitute a contract, for the contract, if any, was : "I agree to pay $25 00 for every share I acquire by this subscription," and *if none were acquired none were to be paid for*. 1 Caine's Reports, 86. And this latter ruling has been constantly adhered to since that time by the Court of New York, as the law of that State on this subject, and we think it decidedly the better decision upon principle and reason. Goshen Turnpike Co. vs. Hurtin, 2 Johns, 217 ; The Highland Turnpike Co. vs. McKean, 11 Johns, 98. Two other cases were referred to and relied on, McRae vs. Russell, 12 Iredell, 244. In that case the subscriber for stock was required to pay the commissioners, $5 00 on each share subscribed, and on non-payment the subscription was declared void. The subscriber had not paid this sum, but instead, had given his bond, on which the suit was brought. Chancellor Ruffin held, that "it is true, the act says his subscription was void, unless he paid the first installment. That only proves, *that no recovery could be had on the subscription*. But it does not show, that if instead of paying cash he got a receipt for it by giving his

bond, the bond would also be void." So in the other case of the Greenville and Columbia Railroad Company vs. Woodsides, 5 Rich. S. C. Rep., 145. The subscriber, at the time he subscribed for the shares in the company's stock, did not pay, as directed by the charter, $25 00 in money, but gave his note to commissioners on which the suit was brought. The Court held : " If the defendant had done no more than subscribe for the shares there would be authority for saying, that a subscription without payment was a violation of the terms on which the charter was granted, and a fraud on the public." " Here the defendant gave his note for the payment, and received his receipt for the same as money." He was, therefore, held liable.

One other case was referred to and relied on by counsel for defendant in this record—that of Tar River Navigation Company vs. Neal, 3 Hawks's Rep., 20 ; but as that case is applicable to the next point, and not this, I will notice it more particularly in that connection. The identical case made in this case was considered in the Supreme Court of Pennsylvania : Hibernia Turnpike Company vs. Henderson, 8 Sergeant & Rawle, 217. That was a suit to recover the sum of five dollars for a subscription for a share in that company. In the charter it was provided " that every person offering to subscribe in the said books, *shall previously pay to the attending commissioners the sum of five dollars for each and every share to be subscribed."* The Court held the payment of the five dollars a condition precedent to the becoming a subscriber or shareholder, and as this payment was not made, that the subscription was void, and could not be enforced. Using this strong language, " Words more strong, and an intention more clearly expressed, to make the payment of the five dollars a condition precedent to the subscription, can not be conceived. By what authority, then, could the commissioners, or the corporation, dispense with the condition ? A corporation being the mere creature of law, can act in no other manner than the law prescribes, and must not be permitted to enter into a contest with the Legislature concerning the policy or expediency of the terms which have

been dictated." Assuming that it was the intent of the law that no subscription should be received, without a previous payment of the five dollars a share, the case will be reduced to this simple question: Can a contract be enforced in a Court of justice which was made in violation of an Act of Assembly? It is not the first time this question has been asked in this Court, and it has received but one answer, "*the contract cannot be enforced.*" I consider the contract in this case as void *ab initio.* The commissioners had no right to receive the subscription, or the corporation to ratify it. It was flying in the face of the law under which they drew their breath. I would willingly have supported this action, if possible, because it is with an ill grace that a man puts his hand to a contract, by which he expects to be benefitted, and afterwards refuses to comply with it. But it has struck me in one strong point of view, on which I cannot shut my eyes. The subscription was taken in direct opposition to the Act of Assembly. *It was, therefore, void.* So of this case. The corporation depended for its existence purely on the will of the Legislature, who had the power and the right to dictate the terms and conditions on which one could become a member thereof, and entitled to the privileges and benefits of the grant. The condition prescribed in this charter to membership, was the payment of five dollars on each share subscribed, at the time of such subscription, and without which no subscription "*should be received or allowed.*" The subscribers had not paid the five dollars; hence, his was no subscription; it amounted to nothing, and could not be collected; for, to allow such subscription enforced, would be to admit the subscriber a member of the corporation against the express declaration of the statute. This cannot be. It is said that the defendant has ratified his subscription by offering, subsequently, to pay calls on that subscription, by voting in the organization, and otherwise acting as a member of the corporation. These were not the things prescribed by the act to enable him to become a member of the corporation. How can they have that effect when the terms of admission prescribed *have not been performed?* It is said, too, that the

company has been organized on the faith of his subscription, and that of others; that the company have commenced the building of the road, and have expended large sums of money on the same; and that to allow the defendant to avoid his subscription, on the score of its illegality, or otherwise, would be to allow him to commit a fraud on others, who have subscribed innocently and in good faith, by compelling them to have the burden of his subscription as well as their own. If this were an action by one who had subscribed for stock on the faith of this subscription, believing it to have been made in compliance with the charter, and who had been injured thereby, this might be a good argument to authorize a recovery in such action; but it cannot be a reason to authorize a recovery by the corporation of a subscription made in direct violation of the charter.

Counsel for plaintiff in error requested the Court to charge the jury, that "Before a right to call on the defendant to pay up any portion of stock (allowing his subscription to be good) so subscribed by him, the plaintiff must prove to their satisfaction, that two thousand shares of the capital stock, including that subscribed by defendant, has been subscribed for, and five dollars on each share paid at the time of subscription." The Court refused to give the charge, and this forms the third ground of exceptions.

We hold that this request was properly refused. The question made in this request differs from that involved in the charge already discussed, in this, that it goes to the validity of the charter, the organization of the company under it, and the right of the corporators to the use of it. The other goes only to the liability of this particular subscriber. The one depends upon the will of the Legislature, the other upon the legality of the contract of the defendant under the charter. While the defendant cannot avail himself of the one as a defense to an action by the company against him, he may of the other. He cannot say that the corporation with whom he has treated or dealt, as a corporation, is not rightfully in the exercise of its powers, because the company having been established by the Legislature, and in the manner pointed out

by the act; although the commissioners appointed by the act to organize the company, may have improperly exercised the powers conferred upon them. Those in possession, and actually in the exercise of the corporate rights, shall be considered as rightfully there against wrong doers. The validity of the charter, the right of those in possession to its use, cannot be called in question collaterally, but only at the instance of the government, in a proceeding instituted directly for that purpose. If there has been an usurpation, it is upon the right of the sovereign alone, and its acquiescence therein is a waiver of the usurpation, and evidence that all things have been righfully performed. Tar River Navigation Co. vs. Neal, 3 Hawks., 520. Kisha, Coquillas and Centre Turnpike Co. vs. McConaly, 1 S. & R., 144. Slee vs. Bloom, 5 Johns. Ch. 381. Williams vs. Southern Bank, 25 Ga., 536.

Let the judgment be reversed.